# FEDERAL ELECTION COMMISSION *v.* NRA POLITICAL VICTORY FUND ET AL.

No. 93–1151.   Argued October 11, 1994—Decided December 6, 1994

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 100. GINSBURG, J., took no part in the consideration or decision of the case.

*Lawrence M. Noble* argued the cause for petitioner. With him on the briefs were *Richard B. Bader* and *Vivien Clair.*

*Deputy Solicitor General Bender* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Days, Assistant Attorneys General Dellinger* and *Hunger, Malcolm L. Stewart,* and *Douglas N. Letter.*

*Charles J. Cooper* argued the cause for respondents. With him on the brief were *Michael A. Carvin* and *William L. McGrath.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

We granted certiorari in this case to review a judgment of the Court of Appeals for the District of Columbia Circuit holding that the congressionally mandated composition of petitioner Federal Election Commission (FEC), including as it did representatives of the Senate and House as nonvoting members, violated the separation-of-powers principle embodied in the Constitution. 512 U. S. 1218 (1994). We do not reach the merits of the question, however, because we conclude that the FEC is not authorized to petition for certiorari in this Court on its own, and that the effort of the Solicitor General to authorize the FEC's petition after the time for filing it had expired did not breathe life into it.

The Court of Appeals entered judgment in this case on October 22, 1993. 6 F. 3d 821. The FEC, in its own name, filed a petition for a writ of certiorari on January 18, 1994. The FEC neither sought nor obtained the authorization of the Solicitor General before filing its petition. By order dated March 21, 1994, 510 U. S. 1190, we invited the United States to file a brief addressing the question "[w]hether the [FEC] has statutory authority to represent itself in this case in this Court." The United States filed a brief on May 27, 1994, contending that the FEC lacks such statutory authority. The United States stated, however, that pursuant to 28 U. S. C. § 518(a) and its implementing regulation, the Solicitor General had authorized the FEC's petition by letter dated May 26, 1994. See Brief for United States as *Amicus Curiae* 13. The FEC filed a brief in response on May 31, 1994, asserting that it has independent statutory authority to represent itself before this Court in this case.

A petition for certiorari in a civil case must be filed within 90 days of the entry of the judgment below. 28 U. S. C. § 2101(c). This "90-day limit is mandatory and jurisdictional." *Missouri* v. *Jenkins*, 495 U. S. 33, 45 (1990). Here, the Court of Appeals entered judgment on October 22, 1993,

and the FEC filed its petition for certiorari on January 18, 1994, two days before the 90-day time period expired. The FEC's petition would appear to be timely. However, if the FEC lacks statutory authority to represent itself in this case before this Court, it cannot independently file a petition for certiorari, but must receive the Solicitor General's authorization. See 28 CFR § 0.20(a) (1994). The question then becomes whether the Solicitor General's May 26, 1994, letter authorizing the FEC's petition relates back to the date of the FEC's unauthorized filing so as to make it timely. We first examine the scope of the FEC's independent litigating authority.

The FEC is an independent agency established by Congress to "administer, seek to obtain compliance with, and formulate policy" with respect to the Federal Election Campaign Act of 1971 (FECA) and chapters 95 and 96 of Title 26. 86 Stat. 3, as amended, 2 U. S. C. § 437c(b)(1). The FECA governs various aspects of all federal elections, see 2 U. S. C. § 431 *et seq.*, whereas chapters 95 and 96 specifically govern the administration of funds for Presidential election campaigns and the payment of matching funds for Presidential primary campaigns, see 26 U. S. C. § 9001 *et seq.* (Presidential Election Campaign Fund Act), 26 U. S. C. § 9031 *et seq.* (Presidential Primary Matching Payment Account Act). The FEC has "exclusive jurisdiction with respect to the civil enforcement of such provisions." 2 U. S. C. § 437c(b)(1); see *Federal Election Comm'n* v. *National Conservative Political Action Comm.*, 470 U. S. 480, 485, 489 (1985).

Two separate statutory provisions provide the FEC with independent litigating authority. The first provision, 2 U. S. C. § 437d(a)(6), applies to actions under both the FECA and chapters 95 and 96 of Title 26. It gives the FEC power "to initiate . . . , defend . . . or appeal any civil action . . . to enforce the provisions of [the FECA] and chapter 95 and chapter 96 of title 26, through its general counsel." The second provision, which is contained in 26 U. S. C. §§ 9010(d) and

9040(d), applies only to actions under chapters 95 and 96 of Title 26. It authorizes the FEC "on behalf of the United States to appeal from, and to petition the Supreme Court for certiorari to review, judgments or decrees entered with respect to actions in which it appears pursuant to the authority provided in this section."

The FEC brought this civil enforcement action seeking to establish a violation of 2 U. S. C. § 441b(a), a provision of the FECA. As noted above, 2 U. S. C. § 437d(a)(6) authorizes the FEC to "initiate" and "appeal" an FECA enforcement action such as the present one. Thus, no dispute exists as to the FEC's authority to litigate this case in the District Court or the Court of Appeals;[1] the question here concerns only the FEC's independent litigating authority before *this* Court when it proceeds under § 437d(a)(6).

Title 28 U. S. C. § 518(a) provides in pertinent part:

> "Except when the Attorney General in a particular case directs otherwise, the Attorney General and the Solicitor General shall conduct and argue suits and appeals in the Supreme Court . . . in which the United States is interested."

By regulation, the Attorney General has delegated authority to the Solicitor General:

> "The following-described matters are assigned to, and shall be conducted, handled, or supervised by, the Solicitor General, in consultation with each agency or official concerned:
>
> "(a) Conducting, or assigning and supervising, all Supreme Court cases, including appeals, petitions for

---

[1] Under 28 U. S. C. §§ 516 and 519, the conduct of litigation on behalf of the United States and its agencies is subject to control of the Attorney General "[e]xcept as otherwise authorized by law." The FEC's "initiation" and "appeal" of this action fall within this "otherwise authorized by law" exception.

and in opposition to certiorari, briefs and arguments, and ... settlement thereof." 28 CFR § 0.20 (1994).

Thus, if a case is one "in which the United States is interested," § 518(a), "it must be conducted and argued in this Court by the Solicitor General or his designee." *United States* v. *Providence Journal Co.*, 485 U. S. 693, 700 (1988); cf. *United States* v. *Winston*, 170 U. S. 522, 524–525 (1898); *Confiscation Cases*, 7 Wall. 454, 458 (1869).

It is undisputed that this is a case "in which the United States is interested." 28 U. S. C. § 518(a). We have recognized, however, that Congress may "exempt litigation from the otherwise blanket coverage of [§ 518(a)]." *Providence Journal*, 485 U. S., at 705, n. 9. According to the FEC, one such exemption is found in 2 U. S. C. § 437d(a)(6). Bearing in mind the Solicitor General's traditional role in conducting and controlling all Supreme Court litigation on behalf of the United States and its agencies—a role that is critical to the proper management of Government litigation brought before this Court, see *id.*, at 702, n. 7, 706; *id.*, at 709, 713–714 (STEVENS, J., dissenting)—we "must ... scrutiniz[e] and sub-jec[t] [§ 437d(a)(6)] to the ordinary tools of statutory construction to determine whether Congress intended to supersede § 518(a)." *Id.*, at 705, n. 9.

Title 2 U. S. C. § 437d(a)(6) gives the FEC power "to initiate ... , defend ... or appeal any civil action ... to enforce the provisions of [the FECA] and chapter 95 and chapter 96 of title 26." The statute clearly authorizes the FEC to "appeal," but it omits any mention of authority to file a "petition for a writ of certiorari" or otherwise conduct litigation before the Supreme Court. The FEC argues that the term "appeal" is not defined in the FECA, and that in the absence of such a definition in the statute the term is construed "in accordance with its ordinary or natural meaning." *FDIC* v. *Meyer*, 510 U. S. 471, 476 (1994). It then refers to the definition of "appeal" found in Black's Law Dictionary 96 (6th ed. 1990), which includes, *inter alia*, the following:

> "There are two stages of appeal in the federal and many state court systems; to wit, appeal from trial court to intermediate appellate court and then to Supreme Court."

This argument might carry considerable weight if it were not for the cognate provision authorizing the FEC to enforce chapters 95 and 96 of Title 26. There, Congress has explicitly provided that "[t]he [FEC] is authorized on behalf of the United States to appeal from, *and to petition the Supreme Court for certiorari to review*," judgments or decrees. 26 U. S. C. §§ 9010(d), 9040(d) (emphasis added). It is difficult, if not impossible, to place these sections alongside one another without concluding that Congress intended to restrict the FEC's independent litigating authority in this Court to actions enforcing the provisions of the Presidential election funds under chapters 95 and 96 of Title 26. Such a differentiation by Congress would be quite understandable, since Presidential influence through the Solicitor General might be thought more likely in cases involving Presidential election fund controversies than in other litigation in which the FEC is involved.[2]

The FEC argues that 26 U. S. C. §§ 9010(d) and 9040(d) shed no light on the issue whether 2 U. S. C. § 437d(a)(6) gives it independent litigating authority before this Court because the provisions are found in different statutes, were drafted by different Congresses in different years, and were

---

[2] The dissent says it is incongruous "to assume that Congress wanted the FEC to have independent authority to invoke our mandatory [appellate] jurisdiction when proceeding under § 437h, but not to have the authority to invoke our discretionary jurisdiction when proceeding under other sections of the same statute." *Post,* at 100, n. 1. But Congress could have thought the Solicitor General would better represent the FEC's interests in cases involving our discretionary jurisdiction "because the traditional specialization of that office has led it to be keenly attuned to this Court's practice with respect to the granting or denying of petitions for certiorari." *Infra,* at 96.

originally written to apply to different agencies of the Government. Brief for Petitioner in Response to Solicitor General 21. The FEC is only partially correct. Section 9010(d) was first enacted in 1971, and at that time it applied to the Comptroller General. See Presidential Election Campaign Fund Act, Pub. L. 92–178, 85 Stat. 497, 569–570. The Federal Election Campaign Act Amendments of 1974 established the FEC, see Pub. L. 93–443, 88 Stat. 1263, 1280, and enacted § 437d(a)(6). See *id.,* at 1282–1283. The 1974 statute transferred to the FEC the functions previously performed by the Comptroller General under 26 U. S. C. § 9010, see *id.,* at 1293, but it also added § 9040 to Title 26. See *id.,* at 1302. Thus, § 9040(d) was *originally* enacted in 1974 as part of the same legislation that created § 437d(a)(6). Each of the two sections, with its contrasting language as to litigating authority, was before the Conference Committee whose report was ultimately adopted by both Houses. H. R. Conf. Rep. No. 93–1438, pp. 967, 989 (1974). Section 9040(d) may have been modeled on § 9010(d), but because both §§ 9040(d) and 437d(a)(6) were designed to deal with the FEC's authority to represent itself in civil enforcement actions, we find the contrasting language to be particularly telling. See *United States* v. *American Building Maintenance Industries,* 422 U. S. 271, 277 (1975); cf. *Keene Corp.* v. *United States,* 508 U. S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).

We recognize sound policy reasons may exist for providing the FEC with independent litigating authority in this Court for actions enforcing the FECA. Congress' decision to create the FEC as an independent agency and to charge it with the civil enforcement of the FECA was undoubtedly influenced by Congress' belief that the Justice Department, headed by a Presidential appointee, might choose to ignore

infractions committed by members of the President's own political party. See, *e. g.,* Federal Election Reform, 1973: Hearings before the Subcommittee on Priveleges *[sic]* and Elections and the Senate Committee on Rules and Administration, 93d Cong., 1st Sess., 17, 177, 186 (1973); Federal Election Campaign Act of 1973: Hearings before the Subcommittee on Communications of the Senate Committee on Commerce, 93d Cong., 1st Sess., 70–71 (1973). The fact that Congress had these policies in mind when giving the FEC independent *enforcement* powers, however, does not demonstrate that it intended to alter the Solicitor General's statutory prerogative to conduct and argue the Federal Government's litigation in the Supreme Court. See 28 U. S. C. § 518(a).

That statutory authority, too, represents a policy choice by Congress to vest the conduct of litigation before this Court in the Attorney General, an authority which has by rule and tradition been delegated to the Solicitor General. See 28 CFR § 0.20(a) (1994). This Court, of course, is well served by such a practice, because the traditional specialization of that office has led it to be keenly attuned to this Court's practice with respect to the granting or denying of petitions for certiorari. But the practice also serves the Government well; an individual Government agency necessarily has a more parochial view of the interest of the Government in litigation than does the Solicitor General's office, with its broader view of litigation in which the Government is involved throughout the state and federal court systems. Whether review of a decision adverse to the Government in a court of appeals should be sought depends on a number of factors which do not lend themselves to easy categorization. The Government as a whole is apt to fare better if these decisions are concentrated in a single official. See *Providence Journal,* 485 U. S., at 706.

Congress could obviously choose, if it sought to do so, to sacrifice the policy favoring concentration of litigating

authority before this Court in the Solicitor General in favor of allowing the FEC to petition here on its own. See 26 U. S. C. §§ 9010(d), 9040(d). But we do not think that § 437d(a)(6) bespeaks such a choice. Nor are we impressed by the FEC's argument that it has represented itself before this Court on several occasions in the past without any question having been raised regarding its authority to do so under § 437d(a)(6). See, *e. g., Federal Election Comm'n* v. *Massachusetts Citizens for Life, Inc.,* 479 U. S. 238 (1986) (finding 2 U. S. C. § 441b unconstitutional as applied); *Federal Election Comm'n* v. *National Right to Work Comm.,* 459 U. S. 197 (1982) (involving interpretation of 2 U. S. C. § 441b(b)(4)(C)); *Bread Political Action Comm.* v. *Federal Election Comm'n,* 455 U. S. 577 (1982) (involving application of 2 U. S. C. § 437h(a)); *Federal Election Comm'n* v. *Democratic Senatorial Campaign Comm.,* 454 U. S. 27 (1981) (involving application of 2 U. S. C. § 441a(d)(3)); *California Medical Assn.* v. *Federal Election Comm'n,* 453 U. S. 182 (1981) (upholding constitutionality of certain campaign expenditure limitations imposed by 2 U. S. C. § 431 *et seq.*). The jurisdiction of this Court was challenged in none of these actions, and therefore the question is an open one before us. See, *e. g., Will* v. *Michigan Dept. of State Police,* 491 U. S. 58, 63, n. 4 (1989) ("[T]his Court has never considered itself bound [by prior *sub silentio* holdings] when a subsequent case finally brings the jurisdictional issue before us") (citation and internal quotation marks omitted); *United States* v. *L. A. Tucker Truck Lines, Inc.,* 344 U. S. 33, 38 (1952) (same). And we do not think that the provisions discussed above, authorizing the FEC to litigate in the federal courts, are the sort of provisions that can be said to be within the province of the agency to interpret. *Federal Election Comm'n* v. *Democratic Senatorial Campaign Comm., supra,* at 37, relied upon by the FEC, dealt with the FEC's interpretation of a substantive provision of the FECA, not with the provisions authorizing independent litigation.

Because the FEC lacks statutory authority to litigate this case in this Court, it necessarily follows that the FEC cannot independently file a petition for certiorari, but must receive the Solicitor General's authorization. See 28 CFR § 0.20(a) (1994). By letter dated May 26, 1994, the Solicitor General authorized the petition filed by the FEC. The Solicitor General's authorization, however, did not come until more than 120 days after the deadline for filing a petition had passed. See 28 U. S. C. § 2101(c). We must determine whether this "after-the-fact" authorization relates back to the date of the FEC's unauthorized filing so as to make it timely. We conclude that it does not.

The question is at least presumptively governed by principles of agency law, and in particular the doctrine of ratification. "If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." Restatement (Second) of Agency § 90 (1958); see also *id.*, Comment *a* ("The bringing of an action, or of an appeal, by a purported agent can not be ratified after the cause of action or right to appeal has been terminated by lapse of time"). Though in a different context, we have recognized the rationale behind this rule: "The intervening rights of third persons cannot be defeated by the ratification. In other words, it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made.*" *Cook* v. *Tullis*, 18 Wall. 332, 338 (1874) (emphasis added). Here, the Solicitor General attempted to ratify the FEC's filing on May 26, 1994, but he could not himself have filed a petition for certiorari on that date because the 90-day time period for filing a petition had expired on January 20, 1994. His authorization simply came too late in the day to be effective. See, *e. g., Nasewaupee* v. *Sturgeon Bay*, 77 Wis. 2d 110, 116–119, 251 N. W. 2d 845,

848–849 (1977) (refusing to uphold town board's ratification of private attorney's unauthorized commencement of lawsuit where ratification came after the statute of limitations had run); *Wagner* v. *Globe,* 150 Ariz. 82, 87, 722 P. 2d 250, 255 (1986) (holding invalid city council's attempt to ratify police chief's dismissal of police officer after police officer commenced a wrongful discharge action). But see *Trenton* v. *Fowler-Thorne Co.,* 57 N. J. Super. 196, 154 A. 2d 369 (1959) (upholding city's ratification of unauthorized lawsuit filed on its behalf even though ratification occurred after limitations period had expired).

The application of these principles of agency law here produces a result entirely consistent with, and perhaps required by, 28 U. S. C. § 2101(c), the statute governing the time for filing petitions for certiorari. "We have no authority to extend the period for filing except as Congress permits." *Jenkins,* 495 U. S., at 45. If the Solicitor General were allowed to retroactively authorize otherwise unauthorized agency petitions after the deadline had expired, he would have the unilateral power to extend the 90-day statutory period for filing certiorari petitions by days, weeks, or, as in this case, even months. Such a practice would result in the blurring of the jurisdictional deadline. But "[t]he time of appealability, having jurisdictional consequences, should above all be clear." *Budinich* v. *Becton Dickinson & Co.,* 486 U. S. 196, 202 (1988).

We hold that the FEC may not independently file a petition for certiorari in this Court under 2 U. S. C. § 437d(a)(6), and that the Solicitor General's "after-the-fact" authorization does not relate back to the date of the FEC's unauthorized filing so as to make it timely. We therefore dismiss the petition for certiorari for want of jurisdiction.

*It is so ordered.*

JUSTICE GINSBURG took no part in the consideration or decision of this case.

JUSTICE STEVENS, dissenting.

The Federal Election Commission (FEC) "is an independent administrative agency vested with exclusive jurisdiction over civil enforcement of the [Federal Election Campaign] Act." *Federal Election Comm'n* v. *National Right to Work Comm.*, 459 U. S. 197, 198, n. 2 (1982). Both the plain language of the governing statute, §311(a)(6), 88 Stat. 1282, as amended, 2 U. S. C. §437d(a)(6), and the unfortunate chapter in our history that gave rise to the creation of the FEC, demonstrate that the FEC's exclusive jurisdiction includes the authority to litigate in this Court without the prior approval of the Solicitor General.

Section 437d(a)(6) expressly provides that the FEC has the power "to initiate . . . , defend . . . or appeal any civil action in the name of the Commission to enforce the provisions of this Act and chapter 95 and chapter 96 of title 26, through its general counsel." It is undisputed that when the statute was enacted, the FEC had the authority to invoke our mandatory jurisdiction by filing an appeal under § 437h of the Federal Election Campaign Act of 1971.[1] Although the term "appeal" may be construed literally to encompass only mandatory review, a far more natural reading of the term as it is used in § 437d(a)(6) would embrace all appellate litigation whether prosecuted by writ of certiorari, writ of mandamus, or notice of appeal. Indeed, 28 U. S. C. § 518(a) (1988 ed., Supp. V), the statute that gives the Attorney

---

[1] Under the original statutory scheme, certain constitutional challenges were to be certified to a court of appeals sitting en banc, with "appeal directly to the Supreme Court." 2 U. S. C. § 437h (1976 ed. and Supp. III). See generally *California Medical Assn.* v. *Federal Election Comm'n*, 453 U. S. 182, 188–189 (1981). Thus, even under the majority's interpretation of the word "appeal," the FEC would have had independent litigating authority, at least when proceeding under § 437h. It is incongruous, to say the least, to assume that Congress wanted the FEC to have independent authority to invoke our mandatory jurisdiction when proceeding under § 437h, but not to have the authority to invoke our discretionary jurisdiction when proceeding under other sections of the same statute.

General authority to conduct litigation in this Court, refers simply to "suits and appeals." Because the term "suits" apparently refers to our original jurisdiction, it appears that the term "appeals" is intended to refer to a broad range of appellate litigation, including both mandatory appeals and petitions for certiorari.

The ambiguity in the word "appeal" is apparent even in §§ 9010(d) and 9040(d), the sections on which the majority relies to cabin the authority granted in § 437d(a)(6). In those sections, Congress uses the word "appeal" to describe two different categories of appellate litigation. In the text of those sections, "appeal" is used in contradistinction to "writ of certiorari" to indicate mandatory appeals. But Congress also uses "appeal" as the title to both §§ 9010(d) and 9040(d). See n. 4, *infra*. As thus used, "appeal" describes an entire category of appellate litigation that includes mandatory appeals and writs of certiorari. I see no reason for assuming that "appeal" in § 437d(a)(6) was intended to incorporate the narrow, rather than the broad, understanding of "appeal."

The historical context in which Congress adopted § 437d(a)(6) demonstrates that the interpretation that the Court adopts today is unfaithful to the intent of Congress. Section 437d(a)(6) was passed as part of the Federal Election Campaign Act Amendments of 1974 (FECA). The 1974 amendments represented a response by Congress to perceived abuses arising out of the 1972 Presidential election campaign and culminating in the resignation of President Nixon. Indeed, the legislative history reveals Congress' belief that "[p]robably the most significant reform that could emerge from the Watergate scandal is the creation of an independent nonpartisan agency to supervise the enforcement of the laws relating to the conduct of elections."[2]

---

[2] See Final Report of the Select Committee on Presidential Campaign Activities, S. Rep. No. 93–981, 93d Cong., 2d Sess., 564 (1974).

One of the most dramatic events of the entire Watergate scandal was the firing of special prosecutor Archibald Cox in October 1973. When Cox threatened to secure a judicial determination that the President was violating a court order to deliver certain Presidential tapes, President Nixon ordered the Attorney General to fire Cox. Both the Attorney General and the Deputy Attorney General refused, and instead resigned. The President's order to fire Cox was then carried out by the Solicitor General, in his capacity as Acting Attorney General. See generally *In re Olson*, 818 F. 2d 34, 41–42 (CADC 1987) *(per curiam)*. This incident, which came to be known as the "Saturday Night Massacre," sparked tremendous public outrage, of which Congress was surely aware. Against this background, Congress would not have been likely, less than one year later, to have made the FEC dependent for its Supreme Court litigation on the approval of the Solicitor General.

In short, the legislative history of the 1974 amendments shows that Congress intended the FEC to have ample authority to oversee Presidential campaigns free of Executive influence. The FEC's authority to conduct civil litigation, including appellate litigation, must be construed in the light of Congress' intent.

Given the language and historical context of § 437d(a)(6), it is unsurprising that the FEC has had a long and uninterrupted history of independent litigation before this Court.[3] Though, as the majority notes, *ante*, at 97, that history does not preclude us from reexamining the FEC's authority, the contemporaneous practice of independent litigation, uninterrupted in subsequent years, provides confirmation of Con-

---

[3] The FEC has represented itself in cases resulting in decisions on the merits, see *ante*, at 97, and as *amicus curiae*, see, *e. g., First Nat. Bank of Boston* v. *Bellotti*, 435 U. S. 765 (1978); *Austin* v. *Michigan Chamber of Commerce*, 494 U. S. 652 (1990). Cf. R. Stern, E. Gressman, S. Shapiro, & K. Geller, Supreme Court Practice 68, n. 56 (7th ed. 1993) (noting FEC's authority to litigate on its own behalf pursuant to § 437d(a)(6)).

gress' original intent. See *BankAmerica Corp.* v. *United States*, 462 U. S. 122, 131 (1983). Moreover, during the administrations of Presidents Ford, Carter, Reagan, and Bush, the Attorneys General and Solicitors General of the United States did not object to the FEC's exercise of authority to litigate in this Court without the prior approval of the Solicitor General. As this Court has noted:

> " '[J]ust as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred.' " *Ibid.*, quoting *FTC* v. *Bunte Brothers, Inc.*, 312 U. S. 349, 352 (1941).

See also *FPC* v. *Panhandle Eastern Pipe Line Co.*, 337 U. S. 498, 513 (1949) ("Failure to use such an important power for [over 10 years] indicates to us that the Commission did not believe the power existed").

In rejecting the result dictated by language, history, and longstanding practice, the majority relies primarily on the differences between § 437d(a)(6) and 26 U. S. C. §§ 9010(d), 9040(d).[4] The relevant language in § 9010, which originally conferred additional and unusual responsibilities on the Comptroller General of the United States, was enacted in 1971 as part of the Presidential Election Campaign Fund Act (Fund Act), which authorized public funding of Presidential campaigns.[5] As the majority notes, *ante*, at 95, § 9040(d) was enacted at the same time as § 437d(a)(6), in 1974. The majority suggests that the differences between §§ 9040(d) and

---

[4] Sections 9010(d) and 9040(d) are identical. They read:

"(d) Appeal. The Commission is authorized on behalf of the United States to appeal from, and to petition the Supreme Court for certiorari to review, judgments or decrees entered with respect to actions in which it appears pursuant to the authority provided in this section."

[5] The 1974 amendment transferred those responsibilities to the FEC.

437d(a)(6) reveal Congress' intent to give the FEC a more limited litigation authority under the latter statute.

The differences between §§ 437d(a)(6) and 9040(d) cannot support the weight that the majority wishes them to bear. The striking similarity between §§ 9010 and 9040 suggests that when Congress enacted § 9040, it did little more than copy the provisions of § 9010.[6] No evidence whatsoever suggests that Congress considered the significance of the wording of those sections when it created § 437d(a)(6). The fact that the FEC's authority to file petitions for certiorari is expressed more explicitly in §§ 9010(d) and 9040(d) of Title 26 than in § 437d(a)(6) of Title 2 is thus not a sufficient reason for failing to give the latter provision its ordinary and well-accepted interpretation.[7]

Furthermore, the majority's reading of the statutes rests on the anomalous premise that Congress decided to give the FEC authority to litigate Fund Act cases in this Court while denying it similar authority in connection with its broader regulatory responsibilities under the FECA. The majority

---

[6] As noted at n. 4, *supra*, §§ 9010(d) and 9040(d) are identical. The other provisions of those statutes, though not identical, are substantially similar. Compare, *e. g.*, § 9010(b) ("The Commission is authorized through attorneys and counsel described in subsection (a) to appear in the district courts of the United States to seek recovery of any amounts determined to be payable to the Secretary of the Treasury as a result of examination and audit made pursuant to section 9007") with § 9040(b) ("The Commission is authorized, through attorneys and counsel described in subsection (a), to institute actions in the district courts of the United States to seek recovery of any amounts determined to be payable to the Secretary as a result of an examination and audit made pursuant to section 9038").

[7] As an aside, I note that the majority's strict reading of §§ 9010(d) and 9040(d) creates its own oddities. For example, it seems to me that an open question under the Court's narrow reading of the statutes is whether the FEC has the right to file briefs in opposition to the certiorari petitions filed by its adversaries. Compare § 9010(d) (granting the FEC authority to "petition the Supreme Court for certiorari to review") with 28 CFR § 0.20 (1994) (delegating to the Solicitor General authority to file "petitions for *and in opposition to* certiorari") (emphasis added).

explains this anomaly by hypothesizing that "Presidential influence through the Solicitor General might be thought more likely in cases involving Presidential election fund controversies than in other litigation in which the FEC is involved." *Ante,* at 94. This hypothesis is untenable. Indeed, the Court has previously noted:

> "[B]oth the Fund Act and FECA play a part in regulating Presidential campaigns. The Fund Act comes into play only if a candidate chooses to accept public funding of his general election campaign, and it covers only the period between the nominating convention and 30 days after the general election. In contrast, FECA applies to all Presidential campaigns, as well as other federal elections, regardless of whether publicly or privately funded." *Federal Election Comm'n* v. *National Conservative Political Action Comm.,* 470 U. S. 480, 491 (1985).

Finally, though admittedly important, the 1971 Act was a relatively undramatic piece of legislation, enacted before Watergate seized the national (and congressional) attention. The notion that Congress was motivated by a concern about improper Presidential influence in 1971 when it enacted the Fund Act, but ignored such concerns in 1974 when it enacted FECA, is simply belied by "a page of history." See *New York Trust Co.* v. *Eisner,* 256 U. S. 345, 349 (1921) (Holmes, J.).

During two decades of FEC litigation we have repeatedly recognized that the FEC's express statutory authority to initiate, defend, or "appeal any civil action" to enforce FECA "through its general counsel" encompasses discretionary appellate review as well as the now almost extinct mandatory appellate review in this Court. Because I remain persuaded that this settled practice was faithful to both the plain language and the underlying purpose of § 437d(a)(6), I respectfully dissent.