# Government Printing Office Involvement in Executive Branch Printing

The Office of Legal Counsel continues to adhere to the analysis and conclusions in its opinion dated May 31, 1996, regarding Government Printing Office involvement in executive branch printing.

July 23, 1996

LETTER OPINION FOR THE GENERAL COUNSEL
GOVERNMENT PRINTING OFFICE

This letter responds to your request for reconsideration of the opinion issued by this office on May 31, 1996 regarding Government Printing Office ("GPO") involvement in executive branch printing. *See Involvement of the Government Printing Office in Executive Branch Printing and Duplicating,* 20 Op. O.L.C. 214 (1996) (the "May 31, 1996 memorandum"). In that opinion, we concluded that, to the extent 44 U.S.C. § 501 & note require all executive branch printing and duplicating to be procured by or through the GPO, the statute violates constitutional principles of separation of powers. We further found that the provision in subsection (2) of 44 U.S.C. § 501 note authorizing the Public Printer to certify exceptions to the general rule of printing by or through the GPO is unconstitutional. In preparing the memorandum, we gave the issues our complete consideration. We continue to adhere to the analysis and conclusions set forth in that memorandum.

Specifically, you contend the May 31, 1996 memorandum represents an unwarranted departure from the principle previously embraced by this office, as set forth in a footnote of an opinion issued on September 13, 1993. *See General Services Administration Printing Operations,* 17 Op. O.L.C. 54 (1993) (the "September 13, 1993 memorandum"). We note, as an initial matter, that the September 13, 1993 memorandum focused on whether the Joint Committee on Printing ("JCP") has the authority to restrict printing functions of the General Services Administration ("GSA"), and whether then-recent legislation had any effect on GSA's authority to engage in printing. The issue central to the May 31, 1996 memorandum — the constitutionality of Congress's mandate that the executive branch use the GPO for all its printing and duplicating work — was addressed only in passing in a footnote of the September 13, 1993 memorandum.

Under separation of powers doctrine, Congress may not vest executive functions in a person or entity subject to congressional control. *See, e.g., Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.,* 501 U.S. 252 (1991); *Bowsher v. Synar,* 478 U.S. 714 (1986). This principle was further clarified subsequent to issuance of the September 13, 1993 memorandum in *Federal Election Comm'n v. NRA Political Victory Fund,* 6 F.3d 821, 827 (D.C. Cir. 1993) (striking down the ex officio, non-voting participation by congressional

agents in the Federal Election Commission on grounds that the "mere presence of agents of Congress on an entity with executive powers offends the Constitution"), *cert. dismissed,* 513 U.S. 88 (1994). As we concluded in the May 31, 1996 memorandum, the GPO is subject to congressional control through the JCP.

Your letter identifies as constitutionally significant (1) the fact that the Public Printer is appointed, and subject to removal at will, by the President; and (2) the absence of JCP veto authority over GPO actions. The President's appointment and removal authority demonstrates only that the executive branch also exercises a degree of control over the GPO and Public Printer. This fact does not ameliorate the constitutional problem that occurs as a result of the congressional control that is exerted over the same entity and official. Similarly, the absence of JCP veto authority in no way diminishes the control Congress exercises through other statutory mechanisms.

You further contend that, because the GPO cannot refuse executive branch printing orders nor modify the contents of any printed material, congressional control over its functions does not violate separation of powers principles. As set forth in detail in the May 31, 1996 memorandum, we disagree that the GPO's functions are so limited in nature that congressional control over such functions holds no constitutional significance. Indeed, as we noted in the May 31, 1996 memorandum, we doubt that the Constitution permits Congress to control functions outside the legislative sphere even where such aggrandizement is de minimis. But we need not resolve that issue at this time because the GPO functions cannot be characterized as merely ministerial. The GPO controls the timing and production of all printing work for the executive branch. *See* 44 U.S.C. § 501 & note. The Public Printer also determines "the form and style in which the printing or binding ordered by a department is executed, and the material and the size of type used." 44 U.S.C. § 1105. Thus, the GPO's functions are essential to the discharge of all executive functions that require printing work.

Accordingly, to the extent footnote 2 of the September 13, 1993 memorandum is at variance with current jurisprudence and the analysis and conclusions set forth in the May 31, 1996 memorandum, it no longer represents the views of this office.

CHRISTOPHER SCHROEDER
*Acting Assistant Attorney General*
*Office of Legal Counsel*