# Application of Consumer Credit Reporting Reform Act of 1996 to Presidential Nomination and Appointment Process

Section 2403(b)(3) of the Consumer Credit Reporting Reform Act of 1996, which requires persons "using a consumer report for employment purposes" to notify the consumer prior to taking any "adverse action" based on the report, does not apply to the process used by the President in considering individuals for nomination and appointment

December 11, 1997

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

The Consumer Credit Reporting Reform Act of 1996 ("CCRRA"), 15 U.S.C.A. § 1681s–2 (West Supp. 1997), offers heightened protections to individuals whose credit histories are being examined by prospective employers. Section 2403(b)(3) of the CCRRA amends section 604 of the Fair Credit Reporting Act ("FCRA") to require any person "using a consumer report for employment purposes" to notify the consumer prior to taking "any adverse action based in whole or in part on the report." *Id.* § 1681b(b)(3). You have requested our advice whether § 2403(b)(3) would apply to the process used by the President in considering individuals for nomination and appointment with the advice and consent of the Senate or appointment to his personal staff. As explained briefly below, we conclude that this provision of the CCRRA does not apply to the President's decisions affecting such positions.

It is a well settled principle of law, applied frequently by both the Supreme Court and the executive branch, that statutes that do not expressly apply to the President must be construed as not applying to him if such application would involve a possible conflict with his constitutional prerogatives. *See, e.g., Franklin v. Massachusetts,* 505 U.S. 788, 800–01 (1992). This Office has described that principle as a "clear statement rule." *See Application of 28 U.S.C. § 458 to Presidential Appointments of Federal Judges,* 19 Op. O.L.C. 350, 351 (1995) ("§ 458 opinion"); *see also Armstrong v. Bush,* 924 F.2d 282, 289 (D.C. Cir. 1991). As the § 458 opinion explains in greater detail, the clear statement rule has two sources. First, a fundamental canon of statutory interpretation requires that statutes be construed to avoid raising serious constitutional questions. 19 Op. O.L.C. at 352. Second, the constitutional principle of separation of powers assures a division of power among the federal government's three coordinate branches. The clear statement rule "exists in order to protect 'th[is] usual constitutional balance' of power." *Id.* (citing *Gregory v. Ashcroft,* 501 U.S. 452, 460–61 (1991)).

Thus, where a statute does not by its express terms apply to the President, it may not be applied to him if doing so would raise a serious separation of powers concern. We first consider the possible application of the CCRRA to the process by which the President nominates non-inferior officers, subject to advice and con-

sent of the Senate. Application of the CCRRA in this context would raise a serious separation of powers concern, for it could interfere with a power committed to the President by the Constitution.

The Appointments Clause provides that the President

> shall nominate, and by and with the consent of the Senate, shall appoint Ambassadors, other Public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The Constitution·thus vests in the President alone the power to nominate non-inferior officers of the United States. Although Congress has an important role in the appointment of such officers by virtue of the Senate's assigned responsibility to advise and consent with regard to such appointments, any attempt by Congress to exercise power over the process of *nominating* a particular individual to a non-inferior office would raise a serious constitutional question. *See* 19 Op. O.L.C. at 358; *Federal Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 824 (D.C. Cir. 1993), *cert. dismissed*, 513 U.S. 88 (1994).

As noted above, section 2403(b)(3) of the CCRRA requires any person who uses a credit report for employment purposes to notify the subject of any adverse action based in whole or in part on the report.[1] To the extent this requirement were applied to the process under which potential nominees are considered by the President, it could impose a burden upon the unfettered nomination power accorded the President under the Constitution. The Constitution does not compel the President to disclose to a nominee the reasons for his decision not to nominate that person; indeed, it does not require that the President have articulable reasons for not nominating someone. To the extent section 2403(b)(3) would require an assessment whether information contained in a credit report contributed to an adverse decision, and then would further require communication of that fact to a potential nominee, section 2403(b)(3) effectively places limitations on the President's constitutional prerogative to nominate non-inferior officers of the United States. We need not here decide whether Congress may, consistent with the Constitution, impose such limitations; it is enough for purposes of this analysis to conclude that such a restriction potentially conflicts with the President's constitu-

---

[1] Section 2403(b)(2) also requires any person procuring a consumer report for employment purposes to inform the consumer and to receive the consumer's authorization in writing for the procurement of such a report Because we understand that you intend to comply with this separate statutory requirement (and indeed may already be doing so by virtue of the authorization signed by those undergoing background investigations), we need not resolve here the question whether the requirement of section 2403(b)(2), if applied to the President, might interfere with the President's power under the Appointments Clause and thus need to be interpreted in light of a clear statement rule. We therefore focus our attention on the requirement imposed by section 2403(b)(3)

tional responsibilities. Where, as here, a potential conflict exists, the clear statement rule requires that the statutory requirement be explicitly applied to the President.

Neither the language nor the legislative history of the CCRRA, however, contains any such express statement. The definitions of "person" and "employment purposes" in section 603 of the FCRA do not explicitly refer to the President or to presidential nominations. Nor does any other provision of the FCRA or the CCRRA state specifically that the requirements of these statutes apply equally with respect to the President as to other potential employers. Respect for the separation of powers and the "unique constitutional position of the President" require such an explicit textual reference. *Franklin v. Massachusetts*, 505 U.S. at 800–01. The legislative history of the CCRRA similarly is silent with respect to its specific application to presidential nominees. What is clear from that history is that the primary focus of the CCRRA was to grant the ordinary consumer greater control over the use of his or her consumer credit report by consumer reporting agencies. *See* 142 Cong. Rec. 26,666, 26,667 (1996) (statement of Sen. Bryan, original sponsor of CCRRA). The absence of any clear statement including the President within the scope of the CCRRA, together with the serious constitutional questions that such an interpretation would raise, compels us to conclude that the CCRRA does not apply to the President's use of credit information with respect to potential presidential nominees for non-inferior offices.

We turn now to two other categories of appointees — inferior officers appointed by the President with the Senate's advice and consent and appointees to positions (other than those requiring advice and consent) on the President's personal staff. Application of the CCRRA to these categories of appointees, at least in some circumstances, might well raise separation of powers concern. However, we need not reach this issue. We have already concluded that section 2403(b) would not apply to the President, because it could do so only if there were a clear statement to that effect. Given that conclusion, we would be rewriting the statute if we were to conclude that the President had to follow the statute with regard to particular classes of potential appointees. Therefore, our conclusion that the clear statement rule prohibits application of section 2403(b)(3) to presidential nominations for non-inferior offices applies equally to all categories of individuals under consideration by the President for nomination or appointment.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*