CORRIGAN, J.
(concurring). I concur with the lead opinion in this case and write separately to respond to Justice Weaver’s now-familiar views regarding this Court’s recusal procedures. (See In re JK, 468 Mich 1239 [2003]; Gilbert v DaimlerChrysler Corp, 469 Mich 889 [2003].)
*105 All the members of this Court serve with the knowledge that “[t]he Due Process Clause requires an unbiased and impartial decisionmaker.” Cain v Dep’t of Corrections, 451 Mich 470, 497; 548 NW2d 210 (1996). It is therefore standard practice for each justice of this Court to voluntarily recuse himself or herself when the justice cannot participate impartially.
In her concurring statement, Justice WEAVER correctly points out that a justice may choose whether to publish his or her reasons for recusal. There is nothing secretive or sinister in this tradition. Indeed, Justice WEAVER acknowledges that over an eight-year period she herself declined to publish reasons for her nonparticipation in approximately 251 cases.[1]
Like justices of the Michigan Supreme Court, the justices of the United States Supreme Court sometimes do and sometimes do not state their reasons for determining whether to participate in a decision. See, e.g., Cheney v United States Dist Court for the Dist of Columbia, 541 US 913; 124 S Ct 1391; 158 L Ed 2d 225 (2004); Intel Corp v Advanced Micro Devices, Inc, 542 US 241; 124 S Ct 2466; 159 L Ed 2d 355 (2004); United States v Hatter, 532 US 557; 121 S Ct 1782; 149 L Ed 2d 820 (2001); Fed Election Comm v NRA Political Victory Fund, 513 US 88; 115 S Ct 537; 130 L Ed 2d 439 (1994); Arizona v United States Dist Court for the Dist of Arizona, 459 US 1191; 103 S Ct 1173; 75 L Ed 2d 425 (1983); Laird v Tatum, 409 US 824; 93 S Ct 7; 34 L Ed 2d 50 (1972). Several of our sister states follow a similar recusal procedure.[2]
*106 Like Justice WEAVER’S 251 pre-2003 recusal decisions without explanation, the thirty-one recusal decisions by the remaining six members of the Court over the past two years comport with our Constitution[3] and the Michigan Court Rules. Justice WEAVER is, of course, entitled to now disagree with our traditional recusal procedures, and as she notes, ADM 2003-26 was opened on May 20, 2003, in response to her concerns. That file is being considered by this Court. The same is true for its predecessor, ADM 2003-24, which this Court opened on April 30, 2003, to consider the disqualification rule when a justice participated in a case at the Court of Appeals.
In addition, in now-closed administrative files, this Court has already considered local judicial disqualification rules, justices’ participation in cases, and amending or interpreting MCR 2.003. See ADM 2002-41 (opened October 1, 2002, and closed April 2, 2003); ADM 1999-60 (opened November 30, 1999, and closed *107 October 6, 2000); ADM 1999-28 (opened April 30,1999, and closed January 4, 2001; reopened May 1, 2001, and closed April 18, 2002); ADM 1992-18 (discussed June 4, 1992, and closed September 1994); ADM 1991-22 (reported November 7, 1991, and closed September 1, 1995). In short, like Justice WEAVER, the rest of this Court is cognizant of the “need to have clear, fair, orderly, and public procedures” in place with respect to the administration of justice.[4]
YOUNG, J., took no part in the decision of this case.

 Ante at 97.

 Much like Michigan, many states have adopted judicial canons informed by the Model Code of Judicial Conduct. See Colorado Code of Judicial Conduct, Ch 24, Canon 3(C) and (E); Iowa Code of Judicial Conduct, Ch 51, Canon 3(C) and (D); Fla Stat Ann Code of Judicial *106 Conduct, Canon 3(E) and (F); New York Code of Judicial Conduct, Canon 3(E) and (F); Ohio Code of Judicial Conduct, Canon 3(G) and (H).

 The recusal standards that Justice Weaver advances rest on her interpretation of Const 1963, art 6, § 6. Justice Weaver’s own prior positions are inconsistent in this regard. For instance, in Gilbert v DaimlerChrysler Corp, 469 Mich 883 (2003), she chose to not participate with respect to other justices on motions for disqualification because she felt it appropriate to decide only whether she herself should participate, and not whether other justices should do so. Such a posture can only be understood as characterizing a denial of a motion for disqualification as an individualized determination made by each justice, and not as a “[d]ecision[] of the supreme court” for purposes of art 6, § 6. Interestingly, in a number of what are indisputably “[djecisions of the supreme court,” Justice Weaver chose to offer no reasons or explanation for her own positions. See, e.g., Taylor v Gate Pharmaceuticals, 468 Mich 1, 19; 658 NW2d 127 (2003) (WEAVER, J., “concurred in the result only”); People v Yost, 468 Mich 122, 134; 659 NW2d 604 (2003) (“concurred in the result only”); Nemeth v Abonmarche Dev, Inc, 457 Mich 16, 44; 576 NW2d 641 (1998) (“concurred only in the result”); People v Jendrzejewski, 455 Mich 495, 521; 566 NW2d 530 (1997) (“concurred only in the result”).

 Ante at 101.