Justice Souter,
with whom Justice Stevens, Justice Ginsburg, and Justice Breyer join, dissenting.
The District Court told petitioner Keith Bowles that his notice of appeal was due on February 27, 2004. He filed a notice of appeal on February 26, only to be told that he was too late because his deadline had actually been February 24. It is intolerable for the judicial system to treat people this way, and there is not even a technical justification for condoning this bait and switch. I respectfully dissent.
I
“ ‘Jurisdiction,’ ” we have warned several times in the last decade, “ ‘is a word of many, too many, meanings.’ ” Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 90 (1998) (quoting United States v. Vanness, 85 F. 3d 661, 663, n. 2 (CADC 1996)); Kontrick v. Ryan, 540 U. S. 443, 454 (2004) (quoting Steel Co.); Arbaugh v. Y & H Corp., 546 U. S. 500, 510 (2006) (same); Rockwell Int’l Corp. v. United States, 549 U. S. 457, 467 (2007) (same). This variety of meaning has insidiously tempted courts, this one included, to engage in “less than meticulous,” Kontrick, supra, at 454, sometimes even “profligate . . . use of the term,” Arbaugh, supra, at 510.
In recent years, however, we have tried to clean up our language, and until today we have been avoiding the errone *216 ous jurisdictional conclusions that flow from indiscriminate use of the ambiguous word. Thus, although we used to call the sort of time limit at issue here “mandatory and jurisdictional,” United States v. Robinson, 361 U. S. 220, 229 (1960), we have recently and repeatedly corrected that designation as a misuse of the “jurisdiction” label, Arbaugh, supra, at 510 (citing Robinson as an example of improper use of the term “jurisdiction”); Eberhart v. United States, 546 U. S. 12, 17-18 (2005) (per curiam) (same); Kontrick, supra, at 454 (same).
But one would never guess this from reading the Court's opinion in this case, which suddenly restores Robinson’s indiscriminate use of the “mandatory and jurisdictional” label to good law in the face of three unanimous repudiations of Robinson’s error. See ante, at 209. This is puzzling, the more so because our recent (and, I repeat, unanimous) efforts to confine jurisdictional rulings to jurisdiction proper were obviously sound, and the majority makes no attempt to show they were not.[1] 1
The stakes are high in treating time limits as jurisdictional. While a mandatory but nonjurisdictional limit is enforceable at the insistence of a party claiming its benefit or by a judge concerned with moving the docket, it may be waived or mitigated in exercising reasonable equitable discretion. But if a limit is taken to be jurisdictional, waiver becomes impossible, meritorious excuse irrelevant (unless the statute so provides), and sua sponte consideration in the *217 courts of appeals mandatory, see Arbaugh, supra, at 514.[2] As the Court recognizes, ante, at 210-211, this is no way to regard time limits set out in a court rule rather than a statute, see Kontrick, supra, at 452 (“Only Congress may determine a lower federal court’s subject-matter jurisdiction”). But neither is jurisdictional treatment automatic when a time limit is statutory, as it is in this case. Generally speaking, limits on the reach of federal statutes, even nontemporal ones, are only jurisdictional if Congress says so: “when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.” Arbaugh, 546 U. S., at 516. Thus, we have held “that time prescriptions, however emphatic, ‘are not properly typed “jurisdictional,” ’ ” id., at 510 (quoting Scarborough v. Principi, 541 U. S. 401, 414 (2004)), absent some jurisdictional designation by Congress. Congress put no jurisdictional tag on the time limit here.[3]
*218 The doctrinal underpinning of this recently repeated view was set out in Kontrick: “the label ‘jurisdictional’ [is appropriate] not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court’s adjudicatory authority.” 540 U. S., at 455. A filing deadline is the paradigm of a claim-processing rule, not of a delineation of cases that federal courts may hear, and so it falls outside the class of limitations on subject-matter jurisdiction unless Congress says otherwise.[4] **4
The time limit at issue here, far from defining the set of cases that may be adjudicated, is much more like a statute of limitations, which provides an affirmative defense, see Fed. Rule Civ. Proc. 8(c), and is not jurisdictional, Day v. *219 McDonough, 547 U. S. 198, 205 (2006). Statutes of limitations may thus be waived, id., at 207-208, or excused by rules, such as equitable tolling, that alleviate hardship and unfairness, see Irwin v. Department of Veterans Affairs, 498 U. S. 89, 95-96 (1990).
Consistent with the traditional view of statutes of limitations, and the carefully limited concept of jurisdiction explained in Arbaugh, Eberhart, and Kontrick, an exception to the time limit in 28 U. S. C. § 2107(c) should be available when there is a good justification for one, for reasons we recognized years ago. In Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U. S. 215, 217 (1962) (per curiam), and Thompson v. INS, 375 U. S. 384, 387 (1964) (per curiam), we found that “unique circumstances” excused failures to comply with the time limit. In fact, much like this case, Harris and Thompson involved District Court errors that misled litigants into believing they had more time to file notices of appeal than a statute actually provided. Thus, even back when we thoughtlessly called time limits jurisdictional, we did not actually treat them as beyond exemption to the point of shrugging at the inequity of penalizing a party for relying on what a federal judge had said to him. Since we did not dishonor reasonable reliance on a judge's official word back in the days when we uncritically had a jurisdictional reason to be unfair, it is unsupportable to dishonor it now, after repeatedly disavowing any such jurisdictional justification that would apply to the 14-day time limit of § 2107(c).
The majority avoids clashing with Harris and Thompson by overruling them on the ground of their “slumber,” ante, at 214, and inconsistency with a time-limit-as-jurisdictional rule.[5] But eliminating those precedents underscores what *220 has become the principal question of this case: why does to-day’s majority refuse to come to terms with the steady stream of unanimous statements from this Court in the past four years, culminating in Arbaugh’s summary a year ago? The majority begs this question by refusing to confront what we have said: “in recent decisions, we have clarified that time prescriptions, however emphatic, ‘are not properly typed “jurisdictional.” ’ ” Arbaugh, 546 U. S., at 510 (quoting Scarborough, 541 U. S., at 414). This statement of the Court, and those preceding it for which it stands as a summation, cannot be dismissed as “some dicta,” ante, at 209, n. 2, and cannot be ignored on the ground that some of them were made in cases where the challenged restriction was not a time limit, see ante, at 211. By its refusal to come to grips with our considered statements of law the majority leaves the Court incoherent.
In ruling that Bowles cannot depend on the word of a District Court Judge, the Court demonstrates that no one may depend on the recent, repeated, and unanimous statements of all participating Justices of this Court. Yet more incongruously, all of these pronouncements by the Court, along with two of our cases,[6] are jettisoned in a ruling for which the leading justification is stare decisis, see ante, at 209 (“This Court has long held ... ”).
II
We have the authority to recognize an equitable exception to the 14-day limit, and we should do that here, as it certainly seems reasonable to rely on an order from a federal judge.[7] *221 Bowles, though, does not have to convince us as a matter of first impression that his reliance was justified, for we only have to look as far as Thompson to know that he ought to prevail. There, the would-be appellant, Thompson, had filed post-trial motions 12 days after the District Court’s final order. Although the rules said they should have been filed within 10, Fed. Rules Civ. Proc. 52(b) and 59(b) (1964 ed.), the trial court nonetheless had “specifically declared that the ‘motion for a new trial’ was made ‘in ample time.’ ” Thompson, supra, at 885. Thompson relied on that statement in filing a notice of appeal within 60 days of the denial of the post-trial motions but not within 60 days of entry of the original judgment. Only timely post-trial motions affected the 60-day time limit for filing a notice of appeal, Rule 73(a) (1964 ed.), so the Court of Appeals held the appeal untimely. We vacated because Thompson “relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline.” 375 U. S., at 387.
Thompson should control. In that ease, and this one, the untimely filing of a notice of appeal resulted from reliance on an error by a District Court, an error that caused no evident prejudice to the other party. Actually, there is one difference between Thompson and this case: Thompson filed his post-trial motions late, and the District Court was mistaken when it said they were timely; here, the District Court made the error out of the blue, not on top of any mistake by Bowles, who then filed his notice of appeal by the specific date the District Court had declared timely. If anything, this distinction ought to work in Bowles’s favor. Why should we have rewarded Thompson, who introduced the error, but now punish Bowles, who merely trusted the District Court’s statement?[8]
*222 Under Thompson, it would be no answer to say that Bowles’s trust was unreasonable because the 14-day limit was clear and counsel should have checked the judge’s arithmetic. The 10-day limit on post-trial motions was no less pellucid in Thompson, which came out the other way. And what is more, counsel here could not have uncovered the court’s error simply by counting off the days on a calendar. Federal Rule of Appellate Procedure 4(a)(6) allows a party to file a notice of appeal within 14 days of “the date when [the district court’s] order to reopen is entered.” See also 28 U. S. C. § 2107(c)(2) (allowing reopening for “14 days from the date of entry”). The District Court’s order was dated February 10,2004, which reveals the date the judge signed it but not necessarily the date on which the order was entered. Bowles’s lawyer therefore could not tell from reading the order, which he received by mail, whether it was entered the day it was signed. Nor is the possibility of delayed entry merely theoretical: the District Court’s original judgment in this case, dated July 10, 2003, was not entered until July 28. See App. 11 (District Court docket). According to Bowles’s lawyer, electronic access to the docket was unavailable at the time, so to learn when the order was actually entered he would have had to call or go to the courthouse and check. See Tr. of Oral Arg. 56-57. Surely this is more than equity demands, and unless every statement by a federal court is to be tagged with the warning “Beware of the Judge,” Bowles’s *223 lawyer had no obligation to go behind the terms of the order he received.
I have to admit that Bowles’s counsel probably did not think the order might have been entered on a different day from the day it was signed. He probably just trusted that the date given was correct, and there was nothing unreasonable in so trusting. The other side let the order pass without objection, either not caring enough to make a fuss or not even noticing the discrepancy; the mistake of a few days was probably not enough to ring the alarm bell to send either lawyer to his copy of the Federal Rules and then off to the courthouse to check the docket.[9] This would be a different case if the year were wrong on the District Court’s order, or if opposing counsel had flagged the error. But on the actual facts, it was reasonable to rely on a facially plausible date provided by a federal judge.
I would vacate the decision of the Court of Appeals and remand for consideration of the merits.

 The Court thinks my fellow dissenters and I are forgetful of an opinion I wrote and the others joined in 2003, which referred to the 30-day rule of 28 U. S. C. 12107(a) as a jurisdictional time limit. See ante, at 210 (quoting Barnhart v. Peabody Coal Co., 537 U. S. 149, 160, n. 6 (2003)). But that reference in Barnhart was a perfect example of the confusion of the mandatory and the jurisdictional that the entire Court has spent the past four years repudiating in Arbaugh, Eberhart, and Kontrick. My fellow dissenters and I believe that the Court was right to correct its course; the majority, however, will not even admit that we deliberately changed course, let alone explain why it is now changing course again.

 The requirement that courts of appeals raise jurisdictional issues sua sponte reveals further ill effects of today’s decision. Under § 2107(c), “[t]he district court may ... extend the time for appeal upon a showing of excusable neglect or good cause.” By the Court’s logic, if a district court grants such an extension, the extension’s propriety is subject to mandatory sua sponte review in the court of appeals, even if the extension was unopposed throughout, and upon finding error the court of appeals must dismiss the appeal. I see no more justification for such a rule than reason to suspect Congress meant to create it.

 The majority answers that a footnote of our unanimous opinion in Kontrick v. Ryan, 540 U. S. 443 (2004), used § 2107(a) as an illustration of a jurisdictional time limit. Ante, at 211 (“[W]e noted that §2107 contains the type of statutory time constraints that would limit a court’s jurisdiction. 540 U. S., at 453, and n. 8”). What the majority overlooks, however, are the post-Kontrick cases showing that § 2107(a) can no longer be seen as an example of a jurisdictional time limit. The jurisdictional character of the 30- (or 60)-day time limit for filing notices of appeal under the present § 2107(a) was first pronounced by this Court in Browder v. Director, Dept. of Corrections of Ill., 434 U. S. 257 (1978). But in that respect Browder was undercut by Eberhart v. United States, 546 U. S. 12 (2005) (per curiam), decided after Kontrick. Eberhart cited Browder (along with several of the other cases on which the Court now relies) as an exam- *218 pie of the basic error of confusing mandatory time limits with jurisdictional limitations, a confusion for which United States v. Robinson, 361 U. S. 220 (1960), was responsible. Compare ante, at 209-210 (citing Browder, Griggs v. Provident Consumer Discount Co., 459 U. S. 56 (1982) (per curiam), and Hohn v. United States, 524 U. S. 236 (1998)), with Eberhart, supra, at 17-18 (citing those cases as examples of the confusion caused by Robinson’s imprecise language). Eberhart was followed four months later by Arbaugh v. Y & H Corp., 546 U. S. 500 (2006), which summarized the body of recent decisions in which the Court “clarified that time prescriptions, however emphatic, are not properly typed jurisdictional,” id., at 510 (internal quotation marks omitted). This unanimous statement of all Members of the Court participating in the case eliminated the option of continuing to accept § 2107(a) as jurisdictional and it precludes treating the 14-day period of § 2107(c) as a limit on jurisdiction.

 The Court points out that we have affixed a “jurisdiction” label to the time limit contained in § 2101(c) for petitions for writ of certiorari in civil cases. Ante, at 212 (citing Federal Election Comm’n v. NRA Political Victory Fund, 513 U. S. 88, 90 (1994); this Court’s Rule 13.2). Of course, we initially did so in the days when we used the term imprecisely. The status of § 2101(e) is not before the Court in this case, so I express no opinion on whether there are sufficient reasons to treat it as jurisdictional. The Court’s observation that jurisdictional treatment has had severe consequences in that context, ante, at 212, n. 4, does nothing to support an argument that jurisdictional treatment is sound, but instead merely shows that the certiorari rule, too, should be reconsidered in light of our recent clarifications of what sorts of rules should be treated as jurisdictional.

 With no apparent sense of irony, the Court finds that “‘[o]ur later cases ... effectively repudiate the Harris Truck Lines approach.’ ” Ante, at 214 (quoting Houston v. Lack, 487 U. S. 266, 282 (1988) (Scalia, J., dissenting); omission in original). Of course, those “later cases” were Browder and Griggs, see Houston, supra, at 282, which have themselves been repudiated, not just “effectively” but explicitly, in Eberhart. See n. 3, supra.

 Three, if we include Wolfsohn v. Hankin, 376 U. S. 203 (1964) (per curiam).

 As a member of the Federal Judiciary, I cannot help but think that reliance on our orders is reasonable. See O. Holmes, Natural Law, in Collected Legal Papers 311 (1920). I would also rest better knowing that my innocent errors will not jeopardize anyone’s rights unless absolutely necessary.

 Nothing in Osterneck v. Ernst & Whinney, 489 U. S. 169 (1989), requires such a strange rule. In Osterneek, we described the “unique circumstances” doctrine as applicable “only where a party has performed an act which, if properly done, would postpone the deadline for filing his *222 appeal and has received specific assurance by a judicial officer that this act has been properly done.” Id., at 179. But the point we were making was that Thompson could not excuse a lawyer’s original mistake in a case in which a judge had not assured him that his act had been timely; the Court of Appeals in Osterneck had found that no court provided a specific assurance, and we agreed. I see no reason to take Osterneck’s language out of context to buttress a fundamentally unfair resolution of an issue the Osterneck Court did not have in front of it. Cf. St. Mary’s Honor Center v. Hicks, 509 U. S. 502, 515 (1993) (“[W]e think it generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code”).

 At first glance it may seem unreasonable for counsel to wait until the penultimate day under the judge’s order, filing a notice of appeal being so easy that counsel should not have needed the extra time. But as Bowles's lawyer pointed out at oral argument, filing the notice of appeal starts the clock for filing the record, see Fed. Rules App. Proc. 6(b)(2)(B), 10(b), and 11, which in turn starts the clock for filing a brief, see Rule 31(a)(1), for which counsel might reasonably want as much time as possible. See Tr. of Oral Arg. 6. A good lawyer plans ahead, and Bowles had a good lawyer.