# United States Court of Appeals for the Federal Circuit

---

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETER-
ANS AFFAIRS,**
*Respondent-Appellant*

---

2020-1637

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-4134, Chief Judge Margaret C. Bartley, Senior Judge Mary J. Schoelen, Judge Michael P. Allen.

---

Decided:  December 15, 2022

---

TIMOTHY L. MCHUGH, Troutman Pepper Hamilton Sanders LLP, Richmond, VA, argued for claimant-appellee. Also represented by ABBEY M. THORNHILL; DAVID J. DEPIPPO, Dominion Energy Services Inc., Richmond, VA.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellant.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR.,

PATRICIA M. MCCARTHY; Y. KEN LEE, BRYAN THOMPSON, Office of General Counsel, United States Department of Veterans, Washington, DC.

MICHAEL E. KENNEALLY, Morgan, Lewis & Bockius LLP, Washington, DC, for amicus curiae National Veterans Legal Services Program. Also represented by JAMES D. NELSON.

R. ANDREW AUSTRIA, McGuireWoods LLP, Washington, DC, for amici curiae Steven Attaway, Scott Cone, Byron Elliott, Elizabeth Lewis, Michael Petta, Eric Richardson. Also represented by MATTHEW A. FITZGERALD, Richmond, VA.

—————————

Before MOORE, *Chief Judge*, NEWMAN, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.[*]

Opinion for the court filed by *Circuit Judge* DYK, in which MOORE, *Chief Judge*, LOURIE, PROST, TARANTO, CHEN, HUGHES, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*, join.

Dissenting opinion filed by *Circuit Judge* NEWMAN, in which *Circuit Judge* REYNA joins.

Dissenting opinion filed by *Circuit Judge* REYNA, in which *Circuit Judge* NEWMAN joins.

DYK, *Circuit Judge*.

This case involves two education programs enacted by Congress for the benefit of veterans—the Montgomery program and the Post-9/11 program. Section 3327(d)(2) of

———————————

[*]    Circuit Judge O'Malley retired on March 11, 2022, and did not participate.

Title 38 limits "the number of months of entitlement . . . to educational assistance" for veterans who switch from Montgomery program to Post-9/11 program benefits without first exhausting their Montgomery benefits. The Secretary of Veterans Affairs appeals from a Court of Appeals for Veterans Claims ("Veterans Court") decision that held that § 3327(d)(2) does not apply to veterans with multiple periods of service. *BO v. Wilkie*, 31 Vet. App. 321 (2019). Because we hold that the plain language of § 3327(d)(2) applies to veterans with multiple periods of service, we reverse.[1]

## BACKGROUND

## I

The United States has long offered education benefits to those that have served in the armed forces. In 1944, Congress enacted the "GI Bill" to provide education benefits to World War II veterans. *See* Servicemen's Readjustment Act of 1944, Pub. L. No. 78-346, 58 Stat. 284. Over the decades, Congress has offered education benefits to new generations of veterans.[2] At issue in this case are two such programs—the Montgomery GI Bill and the Post-9/11 GI Bill.

Congress enacted the Montgomery GI Bill in 1984. *See* Veterans' Educational Assistance Act of 1984, Pub. L. No. 98-525, 98 Stat. 2492, 2553. Codified in Chapter 30 of Title

---

[1]    In this context, a period of service is a period of service sufficient to earn education benefits.

[2]    *See, e.g.*, Veterans' Readjustment Assistance Act of 1952, Pub. L. No. 82-550, 66 Stat. 663; Veterans' Readjustment Benefits Act of 1966, Pub. L. No. 89-358, 80 Stat. 12; Veterans' Education and Employment Assistance Act of 1976, Pub. L. No. 94-502, 90 Stat. 2383; and Veterans' Rehabilitation and Education Amendments of 1980, Pub. L. No. 96-466, 94 Stat. 2171.

38, the Montgomery GI Bill provides education benefits for veterans who serve on active duty between July 1, 1985, and September 30, 2030. *See* 38 U.S.C. § 3011(a)(1)(A). Codified in Chapter 33, the Post-9/11 GI Bill was enacted in 2008 and provides education benefits for veterans who serve on active duty after September 11, 2001. *See* Post-9/11 Veterans Educational Assistance Act of 2008, Pub. L. No. 110-252, 122 Stat. 2323, 2357; 38 U.S.C. § 3311(b).

Under the Montgomery GI Bill, a veteran is entitled to a maximum of 36 months of benefits. This cap applies no matter how long the veteran has served or how many periods of service the veteran has provided. *See* 38 U.S.C. § 3013(a)(1). The same is true of the Post-9/11 program. The maximum period of benefits that a veteran may earn under the Post-9/11 program is 36 months. *See id.* § 3312(a).

Since both Montgomery and Post-9/11 benefits can be earned for the same period or periods of service, Congress continued and adopted various provisions to limit the benefits under the two programs. First, Congress had previously enacted a 48-month cap on benefits programs generally, 38 U.S.C. § 3695(a), and amended that section to include the Post-9/11 program. Pub. L. No. 110-252, § 5003(b)(1)(B), 122 Stat. 2323, 2375. Second, in enacting the Post-9/11 program, Congress provided that benefits under the two programs could not be received concurrently. *See* Pub. L. No. 110-252, § 5003(a)(1), 122 Stat. 2323, 2373 (codified at 38 U.S.C. § 3322(a)). Third, in 2011, Congress enacted § 3322(h), which was designed to prevent a veteran with a single period of service from earning more than 36 months of benefits under the two programs combined. *See* Post-9/11 Veterans Educational Assistance Improvements Act of 2010, Pub. L. No. 111-377, § 111, 124 Stat. 4106, 4120–21 (2011); S. REP. 111-346, at 19 (2010).

Fourth, in 2008 as part of the Post-9/11 program, Congress enacted 38 U.S.C. § 3327(d)—the provision at issue

in this case.[3]  Section 3327(a) describes various classes of individuals "eligible to elect participation in post-9/11 educational assistance."  One such class of individuals includes those who are "entitled to basic educational assistance under [the Montgomery program] and [have] used, but retain[] unused, entitlement under that [program]."  38 U.S.C. § 3327(a)(1)(A).  Subsection (d) establishes a "[l]imitation on entitlement" for such individuals.  *Id.* § 3327(d)(2).  For those individuals, "the number of months of entitlement . . . to educational assistance under [the Post-9/11 program] shall be the number of months equal to . . . the number of months of unused entitlement of the individual under [the Montgomery program], as of the date of the election." *Id.* § 3327(d)(2)(A).[4]  The veteran here contends, and the Veterans Court concluded, that this limit does not apply to veterans with multiple periods of qualifying service and that he was entitled to a full 48 months of benefits.  The court found that Mr. Rudisill had used 25 months and 14 days of Montgomery benefits and was likely entitled to an additional 22 months and 16 days of benefits, which he could take entirely as Post-9/11 benefits.

II

---

[3]    The relevant provisions of 38 U.S.C. § 3327 were first enacted as part of the Post-9/11 statute (§ 5003(c)) and later codified as § 3327 in 2016.  *See* Pub. L. No. 110-252, § 5003(c), 122 Stat. 2323, 2375–78; Jeff Miller and Richard Blumenthal Veterans Health Care and Benefits Improvement Act of 2016, Pub. L. No. 114-315, § 405(a), 130 Stat. 1536, 1555–58.

[4]    The statute provides for an exception, not at issue here, equal to "the number of months, if any, of entitlement revoked by the individual under subsection (c)(1)," which relates to the transfer of educational assistance to family members.  38 U.S.C. § 3327(d)(2)(B).

The facts of Mr. Rudisill's case are straightforward. Mr. Rudisill served three periods of active-duty service between January 2000 and August 2011, totaling nearly 8 years of active-duty service. Mr. Rudisill's first period of service, from January 2000 to June 2002, qualified him for Montgomery education benefits, which he began using for his undergraduate education in 2003. He served again while finishing his undergraduate degree, ultimately using 25 months and 14 days of Montgomery benefits for his undergraduate education.

After leaving military service in 2011, Mr. Rudisill was accepted into Yale Divinity School. Mr. Rudisill filed an application for Department of Veterans Affairs ("VA") education benefits (VA Form 22-1990) online. He applied for "Chapter 33 – Post-9/11 GI Bill" benefits, making a "Chapter 33 in Lieu of Chapter 30 [Montgomery program]" election. In filing the application, Mr. Rudisill acknowledged the following:

> By electing Chapter 33 [Post-9/11 benefits], I acknowledge that I understand the following: . . . .
>
> If electing chapter 33 in lieu of chapter 30 [Montgomery benefits], my months of entitlement under chapter 33 *will be limited to the number of months of entitlement remaining under chapter 30 on the effective date of my election.* However, if I completely exhaust my entitlement under chapter 30 before the effective date of my chapter 33 election, I may receive up to 12 additional months of benefits under chapter 33.
>
> My election is irrevocable and may not be changed.

J.A. 585 (emphasis added, formatting altered); *see also* J.A. 708–711 (paper form). Mr. Rudisill listed an effective date of March 18, 2015, and elected to receive "Chapter 33 – Post-9/11" benefits in lieu of "Chapter 30; MGIB." J.A. 583–85.

The VA issued Mr. Rudisill a certificate of eligibility for 10 months and 16 days of Post-9/11 benefits—an amount equal to Mr. Rudisill's remaining Montgomery entitlement. Mr. Rudisill appealed the decision to the Board of Veterans' Appeals ("the Board"), seeking the "full potential amount of education assistance benefits" available under the Post-9/11 program, "instead of being limited to his remaining time under [the Montgomery program]." J.A. 59. The Board denied the appeal, holding that "[a]dditional educational assistance benefits under [the Post-9/11 program] are not allowed because the Veteran made an irrevocable election to receive benefits under [the Post-9/11 program], in lieu of benefits under [the Montgomery program]." J.A. 64.

Mr. Rudisill appealed the Board's decision to the Veterans Court. A split panel agreed with Mr. Rudisill. The majority opinion found the statute ambiguous and held that "Congress's statutory scheme is best interpreted to provide that separate periods of qualifying service allow a veteran such as [Mr. Rudisill] to receive full benefits under both programs subject to an aggregate cap on all such benefits." J.A. 7. The majority implicitly concluded that 38 U.S.C. § 3327 only "applies to those individuals with a single period of service already positioned to use [Montgomery] benefits." J.A. 25. Then-Judge Bartley[5] dissented. She concluded that 38 U.S.C. § 3327, including its limitation on entitlement for veterans who had used only part of their Montgomery benefits, unambiguously applied to Mr. Rudisill. Since Mr. Rudisill "voluntarily signed an irrevocable election to receive Post-9/11 education benefits . . . section 3327 prescribes that his entitlement to Post-9/11 benefits is limited to 10 months and 16 days, which was the unused remainder of his [Montgomery] entitlement when he filed his section 3327 election." J.A. 30.

---

[5]    Judge Bartley has since become Chief Judge.

The Secretary appealed the Veterans Court's decision to our Court. Initially, a split panel affirmed. *Rudisill v. McDonough*, 4 F.4th 1297, 1299 (Fed. Cir. 2021). The Secretary petitioned for rehearing *en banc*. We granted the Secretary's petition and vacated the panel opinion. *Rudisill v. McDonough*, No. 2020-1637, 2022 WL 320680 (Fed. Cir. Feb. 3, 2022) (per curiam). We directed the parties to brief the following questions:

> For a veteran who qualifies for the Montgomery GI Bill and the Post-9/11 GI Bill under a separate period of qualifying service, what is the veteran's statutory entitlement to education benefits?

> What is the relation between the 48-month entitlement in 38 U.S.C. § 3695(a), and the 36-month entitlement in § 3327(d)(2), as applied to veterans such as Mr. Rudisill with two or more periods of qualifying military service?

*Id.* at *1 (formatting modified).

## DISCUSSION

### I

Mr. Rudisill first argues that we lack jurisdiction to consider this appeal because the government's appeal was not properly authorized by the Solicitor General before the jurisdictional deadline.

Section 7292(a) of Title 38 authorizes the Federal Circuit to review decisions of the Veterans Court "with respect to the validity of a decision of the [Veterans] Court on . . . any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the

decision." [6]  The notice of appeal must be filed within 60 days.  *Id.*; *see* 28 U.S.C. § 2107(b).  Under regulations promulgated by the Attorney General, the Solicitor General is responsible for "[d]etermining whether . . . appeals will be taken by the Government to all appellate courts."  28 C.F.R. § 0.20(b).  In other words, the Solicitor General must authorize all appeals taken by the Department of Justice.

Here, the Veterans Court entered a final judgment on January 7, 2020.  The Secretary filed a notice of appeal 59 days later, on March 6, 2020.  The Solicitor General did not authorize the appeal until May 27, 2020, 141 days after the Veterans Court's final judgment.

Mr. Rudisill argues that under *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88 (1994) ("*FEC*"), the Solicitor General's authorization was untimely and deprives this court of jurisdiction.  In *FEC*, the Federal Election Commission ("FEC") had filed a petition for certiorari before the 90-day deadline had passed.  *Id.* at 90.  The Solicitor General authorized the petition after the deadline.  *Id.* at 98.  The Supreme Court held that the FEC did not have independent authority to litigate before the Supreme Court.  *Id.*  "Because the FEC lacks statutory authority to litigate this case in [the Supreme] Court, it necessarily follows that the FEC cannot independently file a petition for certiorari, but must receive the Solicitor General's authorization."  *Id.*  Under these circumstances, the

---

[6]     The Veterans Court remanded to the Board of Veterans' Appeals.  Although we typically do not review remand orders, *Williams v. Principi*, 275 F.3d 1361, 1364 (Fed. Cir. 2002), we nevertheless may review "a clear and final decision on a legal issue that will directly govern the remand proceedings [where] there is a substantial risk that the issue will not survive a remand."  *Frederick v. Shinseki*, 684 F.3d 1263, 1265 (Fed. Cir. 2012) (citing *Williams*, 275 F.3d at 1364).

Solicitor General's "'after-the-fact' authorization [did] not relate[] back to the date of the FEC's unauthorized filing so as to make it timely." *Id.* at 99.

The *FEC* decision is not applicable here. This case does not involve an agency of the United States without independent litigating authority that has filed its own petition for certiorari or notice of appeal. Rather, here, the Department of Justice—which indisputably has the authority to file its own appeals—has filed an appeal on behalf of the Secretary of Veterans Affairs. When the United States appeals, "the Attorney General and the Solicitor General shall conduct and argue suits and appeals in . . . the United States Court of Appeals for the Federal Circuit" unless "the Attorney General in a particular case directs otherwise." 28 U.S.C. § 518(a). The Attorney General has required Solicitor General authorization for appeals to this court. 28 C.F.R. § 0.20(b). But the Attorney General also delegated his general litigating authority to the Assistant Attorney General for the Civil Division to conduct most civil litigation (including these types of cases) "by and against the United States [and] its agencies . . . in all courts and administrative tribunals to enforce Government rights, functions, and monetary claims." 28 C.F.R. § 0.45(h); *see also id.* § 0.46.

The Assistant Attorney General for the Civil Division has interpreted that authority to extend to filing protective notices of appeals pending a decision by the Solicitor General. Although the Solicitor General is tasked with "conduct[ing], handl[ing], or supervis[ing]" the determination of whether the government will appeal adverse decisions, 28 C.F.R. § 0.20(b), that supervision does not preclude the Assistant Attorney General from filing protective appeals pursuant to his broad grant of authority to conduct civil litigation on behalf of the government. *See Hogg v. United States*, 428 F.2d 274, 280 (6th Cir. 1970) ("[N]othing in 28 C.F.R. § 0.20(b) . . . requires the Solicitor General to have authorized the prosecution of an appeal before the filing of

the notice of appeal."). This is not to say that the Assistant Attorney General has the authority under 28 C.F.R. § 0.45 to prosecute an appeal after filing a protective notice without the Solicitor General's authorization, which is clearly required by 28 C.F.R. § 0.20(b). *See id.* at 280 (distinguishing "filing of [a] notice of appeal" from "authoriz[ing] the prosecution of an appeal," the latter of which must be done by the Solicitor General). We thus conclude that the Assistant Attorney General for the Civil Division, pursuant to delegated authority, has properly filed a protective notice of appeal pending Solicitor General approval.[7]

---

[7]    Mr. Rudisill argues that § 6 of the DOJ Directive promulgated by the Principal Deputy Assistant Attorney General for the Civil Division only authorizes protective notices of appeal involving "any direct reference or delegated case," 28 C.F.R. Pt. 0, Subpt. Y App. § 6, a category that does not include cases from the Veterans Court. Because we conclude that the Assistant Attorney General had the authority to file the protective appeal in this case pursuant to 28 C.F.R. § 0.45, and the appeal was filed under this authority, *see* ECF No. 1–2, we need not decide whether § 6 also authorizes the appeal. But the language of § 6 concerning protective notices of appeal appears not to be limited to delegated or direct reference cases (like other parts of § 6). It provides that:

> Until the Solicitor General has made a decision whether an appeal will be taken, the Government attorney handling the case must take all necessary procedural actions to preserve the Government's right to take an appeal, including filing a protective notice of appeal when the time to file a notice of appeal is about to expire and the Solicitor General has not yet made a decision. Nothing in the foregoing directive affects this obligation.

The decisions of our sister circuits in *Hogg* and *United States v. Hill*, 19 F.3d 984, 991 n.6 (5th Cir. 1994), support this conclusion. In *Hogg*, the appellee argued that the government's notice of appeal was "fatally defective because it was filed by the United States Attorney at a time when the Solicitor General had not authorized the appeal." 428 F.2d at 277. The Sixth Circuit disagreed, holding that the "Attorney General has plenary power over the conduct of litigation to which the United States is a party" and the United States Attorney filing the notice of appeal was authorized to do so by internal instructions at the Department of Justice requiring protective notices of appeal. *Id.* at 278–80. The Sixth Circuit held that "nothing in 28 C.F.R. § 0.20(b) . . . requires the Solicitor General to have authorized the prosecution of an appeal before the filing of the notice of appeal." *Id.* at 280. Accordingly, there was no defect in the government's notice of appeal. In *Hill*, the Fifth Circuit followed *Hogg*. *Hill*, 19 F.3d at 991 n.6. Mr. Rudisill points to no case reaching a contrary conclusion.

In this case, the Assistant Attorney General for the Civil Division, pursuant to delegated authority, timely directed the filing of a notice of appeal. We accordingly have jurisdiction over this appeal.

## II

We turn to the merits of the case. The standard of review as to issues of statutory interpretation is *de novo*. *See Sucic v. Wilkie*, 921 F.3d 1095, 1098 (Fed. Cir. 2019). By its plain language, § 3327(d)(2) applies to Mr. Rudisill. Section 3327(d)(2) establishes a limit on education benefits for an individual who "mak[es] an election under subsection (a) who is described by paragraph (1)(A) of that subsection." Paragraph (1)(A) describes an individual who

---

28 C.F.R. Pt. 0, Subpt. Y App. § 6.

"elect[s] to receive educational assistance under [the Post-9/11 program]" and who "(1) as of August 1, 2009—(A) is entitled to basic educational assistance under [the Montgomery program] and has used, but retains unused, entitlement under [the Montgomery program.]"    38 U.S.C. § 3327(a)(1)(A). Mr. Rudisill is such an individual.  He does not dispute that he had "used, but retain[ed] unused" Montgomery benefits and sought Post-9/11 benefits.  *See, e.g.,* Appellee's Br. 51 n.15 (Mr. Rudisill "has 'used, but retains unused' Montgomery entitlement and seeks Post-9/11 benefits.")  Rather, Mr. Rudisill disputes that he made the election described in § 3327(a) when he chose to forgo his Montgomery benefits and instead seek Post-9/11 benefits. *Id.*   But we see no basis for interpreting "election" in § 3327(a)(1)(A) not to cover Mr. Rudisill's election of Post-9/11 benefits instead of exhausting his Montgomery benefits.  Given the breadth of the statute, Mr. Rudisill falls under Paragraph (1)(A) as an individual who both "elect[s] to receive educational assistance under [the Post-9/11 program]" and who "(1) as of August 1, 2009—(A) is entitled to basic educational assistance under [the Montgomery program] and has used, but retains unused, entitlement under [the Montgomery program.]"  Section 3327(d)(2) unambiguously limits the "number of months of entitlement" for such an individual to "the number of months of unused entitlement of the individual under [the Montgomery program]."

Mr. Rudisill nonetheless contends that § 3327(d) only applies to individuals with a single period of service.  The Veterans Court and the panel majority agreed.  But there is no such limit in the language of the provision, nor any suggestion in its legislative history that the section is so limited.  Sections 3322(d) and 3327 do not mention periods of service.  The only related section that distinguishes veterans with a single period of service from veterans with multiple periods of service is § 3322(h), which was enacted after the provisions at issue here and which was intended

to prevent veterans from being able to "exhaust[] entitlement to 36 months of training under the [Montgomery program and] subsequently enroll and receive an additional 12 months of entitlement under the Post-9/11 GI Bill based on the same period of service." S. REP. 111-346, at 19.

Moreover, under Mr. Rudisill's interpretation, veterans with multiple periods of service would not be able to avail themselves of the benefits of § 3327(f) and (g), which are both triggered by the same paragraph (a)(1)(A) election as the limit in § 3327(d). Subsection (f) provides additional assistance to veterans who make the § 3327(a)(1)(A) election and who have previously made contributions toward the Montgomery program. Subsection (g) allows veterans making the § 3327(a)(1)(A) election to retain their recruitment incentives for critical skills. There is no indication that Congress intended to limit these benefits to veterans with a single period of service.

Mr. Rudisill argues that the 48-month limitation on education benefits under 38 U.S.C. § 3695(a) is the only limit that should apply here. Section 3695(a) provides, "The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below [including the Montgomery program and the Post-9/11 program] may not exceed 48 months . . . ." This provision "is not a source of veterans benefits," *Carr v. Wilkie*, 961 F.3d 1168, 1174 (Fed. Cir. 2020), but rather an additional limitation on a veteran's use of education benefits from multiple programs. There is nothing unusual about having multiple benefit limitations in a single statute. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (holding that where "a general authorization and a more limited, specific authorization exist side-by-side" in a statutory scheme, "[t]he terms of the specific authorization must be complied with"). Section 3695 does not state or imply that the plain language of 38 U.S.C. § 3327(d)(2) is inapplicable to veterans with multiple periods of service.

Mr. Rudisill contends that the pro-veteran canon of interpretation supports the result he favors. Under the pro-veteran canon, "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Whatever role this canon plays in statutory interpretation, it plays no role where the language of the statute is unambiguous—the situation here. It is not our task to rewrite the statute to make it more favorable to veterans when the statutory language is clear.[8]

## CONCLUSION

Section 3327 applies to Mr. Rudisill and limits his Post-9/11 benefits to 10 months and 16 days, the amount of his unused Montgomery entitlement.

## REVERSED

---

[8] Mr. Rudisill suggests that the government's position is contrary to its own regulations implementing the Post-9/11 program. There is no inconsistency. Subsection 21.9550(b)(1) of Title 38 of the Code of Federal Regulations specifically tracks the language of 38 U.S.C. § 3327(d)(2):

An individual who, as of August 1, 2009, has used entitlement under [the Montgomery program], but retains unused entitlement under that chapter, makes an irrevocable election to receive educational assistance under the provisions of [the Post-9/11 program] instead of educational assistance under the provisions of [the Montgomery program], will be limited to one month (or partial month) of entitlement under [the Post-9/11 program] for each month (or partial month) of unused entitlement under [the Montgomery program] (including any months of [Montgomery program] entitlement previously transferred to a dependent that the individual has revoked).

16                                                   RUDISILL v. MCDONOUGH

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2020-1637

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-4134, Chief Judge Margaret C. Bartley, Senior Judge Mary J. Schoelen, Judge Michael P. Allen.

---

NEWMAN, *Circuit Judge*, with whom REYNA, *Circuit Judge*, joins, dissenting.

The court now holds, *en banc*, that veterans with more than one period of military service who switch their unused Montgomery education benefits to Post-9/11 benefits are not entitled to the aggregate 48 months of education benefits that the statute provides. The court holds: "Section 3327(d)(2) of Title 38 limits 'the number of months of entitlement . . . to educational assistance' for veterans who switch from Montgomery program to Post-9/11 program benefits without first exhausting their Montgomery benefits," thereby capping at 36 months the total benefits for

veteran Rudisill's three separate enlistments. Maj. Op. at 2–3 (ellipses in original). The court holds that a veteran's total education benefits are limited to "the number of months of unused entitlement of the individual under [the Montgomery program]." Maj. Op. at 13 (brackets in original).

Thus the court reverses the decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court"), and holds that three-time Army veteran James Rudisill is not entitled to the 48 months of total education benefits earned by re-enlistment. The court instead limits him to the 36 months of education benefits from his initial period of military service. This holding is contrary to statute, regulation, and policy. I respectfully dissent.

## DISCUSSION

### A

### *Mr. Rudisill has eight years of military service in three enlistments, and is entitled by statute to 48 months of education benefits*

Mr. Rudisill served three tours of active duty in the United States Army. His first enlistment, from January 2000 to June 2002, entitled him to 36 months of education benefits under the Montgomery GI Bill—the only bill then applicable. He used 25 months and 14 days of Montgomery benefits for his undergraduate education, leaving 10 months and 16 days of unused benefits from this enlistment period.

He re-enlisted for two additional periods, serving from June 2004 to December 2005, then November 2007 to August 2011. He served in Iraq and Afghanistan and received medals, commendations, and the rank of Captain. He earned 36 months of education benefits for each period of service and is entitled to benefits for all periods, subject to the aggregate cap of 48 months. 38 U.S.C. § 3695(a).

The Post-9/11 GI Bill was enacted in 2008, to provide enhanced education benefits compared with the Montgomery and earlier education bills, including increased support for tuition, housing, books, and supplies. The Post-9/11 Bill was made retroactively applicable to veterans serving after September 11, 2001; such veterans with unused prior benefits were authorized to elect to receive Post-9/11 benefits in place of their prior benefits. Mr. Rudisill made this election for his unused Montgomery benefits.

Mr. Rudisill now seeks to use his education benefits for post-graduate education. He converted his unused Montgomery benefits of 10 months 16 days into Post-9/11 benefits, and sought to also use additional Post-9/11 benefits from his re-enlistment service, up to the cap of 48 months. However, the Veterans Administration ("VA") held that his Post-9/11 benefits are limited to the number of months and days of his unused Montgomery benefits from his initial period of service, capping the total benefits for his three enlistments at 36 months. The VA held that he could not receive additional Post-9/11 benefits.

The Veterans Court reversed the VA, and held that Mr. Rudisill is entitled to the requested total of 22 months and 16 days of Post-9/11 benefits, that is, the unused 10 months and 16 days from his first period of service plus 12 months of benefits from his re-enlistment, thus meeting the aggregate cap of 48 months.[1] My colleagues now reverse the Veterans Court, and "limit[] his Post-9/11 benefits to 10 months and 16 days, the amount of his unused Montgomery entitlement." Maj. Op. at 15.

Thus this court denies Mr. Rudisill the additional 12 months of Post-9/11 benefits earned by re-enlistment and

---

[1]    *BO v. Wilkie*, 31 Vet. App. 321 (2019) ("Vet. Ct. Op.").

rules that veterans with multiple periods of service are limited to 36 months total education benefits if they choose to use their unused Montgomery benefits under the Post-9/11 Bill. This ruling is incorrect, as shown by statute, regulations, and the history of GI education bills.

B

### *The purpose of the Post-9/11 GI Bill is to enlarge and reinforce education benefits for veterans*

The Post-9/11 GI Bill was introduced by Senator Jim Webb, a Vietnam veteran, GI Bill beneficiary, and former Secretary of the Navy. The Bill was "designed to enhance" the education benefits for all veterans serving after September 11, 2001, and "to give the appropriate level of recognition and respect to people who have been serving since 9/11 rather than having to rely on the Montgomery GI Bill, which is a peacetime bill." *Hearing on Pending Benefits Legislation: Hearing Before the S. Comm. on Veterans' Affairs*, 110th Cong. 5–6 (2007).

The Post-9/11 Bill assured that veterans with unused Montgomery entitlements could use those entitlements for the enhanced Post-9/11 support, and it preserved the provisions whereby separate periods of qualifying service earn additional months of benefits up to the aggregate total of 48 months. Following is an outline of the principal relevant provisions.

### *38 U.S.C. § 3695 provides 48 months of total education benefits for re-enlisting veterans*

The purpose of providing additional months of benefits to veterans who re-enlist is both to show appreciation of their additional service and to give an incentive to re-enlistment. The 48 months total education benefits for veterans with more than one period of service and qualifying under more than one benefits program is codified at 38 U.S.C. § 3695. Section 3695 is an "administrative

provision" applicable to all education programs; the Montgomery and Post-9/11 benefits are listed in subsection (a)(4):

> **38 U.S.C. § 3695.  Limitation on period of assistance under two or more programs.**
>
> **(a)** The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below may not exceed 48 months (or the part-time equivalent thereof):
>> **(1)** Parts VII or VIII, Veterans Regulation numbered 1(a), as amended.
>> **(2)** Title II of the Veterans' Readjustment Assistance Act of 1952.
>> **(3)** The War Orphans' Educational Assistance Act of 1956.
>> **(4)** Chapters 30, 32, 33, 34, and 36.
>> **(5)** Chapters 107, 1606, 1607, and 1611 of title 10.
>> **(6)** Section 903 of the Department of Defense Authorization Act, 1981 (Public Law 96-342, 10 U.S.C. 2141 note).
>> **(7)** The Hostage Relief Act of 1980 (Public Law 96-449, 5 U.S.C. 5561 note).
>> **(8)** The Omnibus Diplomatic Security and Antiterrorism Act of 1986 (Public Law 99-399).

The 48-month aggregate period has a long history. Under the World War II GI Bill of 1944, veterans were entitled to up to 48 months of education benefits. The Korean War GI Bill reduced the term to 36 months. The Vietnam-era GI Bill provided that veterans eligible under more than one of the World War II, Korean War, and Vietnam War GI Bills would receive up to 48 months of benefits for distinct periods of qualifying service. An estimated 20.7 million veterans furthered their education under these GI Bills

6                                    RUDISILL v. MCDONOUGH

alone.  Donald J. Spaulding, *The Four Major GI Bills: A Historical Study of Shifting National Purposes and the Accompanying Changes in Economic Value to Veterans* (Dec. 2000) (Ph.D. dissertation, University of North Texas) (available at https://digital.library.unt.edu/ark:/67531/-metadc2692/m2/1/high_res_d/dissertation.pdf).

The GI Bills since 1968 all provide that a re-enlisting veteran eligible under multiple programs earns aggregate education benefits up to the total of 48 months.  Yet the court today holds that re-enlisting veterans are capped at an aggregate total of 36 months if they convert their unused Montgomery benefits into Post-9/11 benefits.  This holding cannot be reconciled with any statute.

Under the provisions enacted in the Vietnam-era GI Bill and still codified today, an eligible veteran is authorized to "use at least 12 months of any entitlement that he earned as a result of post-Korean service, notwithstanding the fact that he had previously received a full 36 months of education or training under one or more of the other Veterans' Administration education assistance program or programs." S. Rep. No. 90-1394, 4487 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4484.  This Senate Report explains that "if the veteran finds that he does need additional education, such as a master's degree to successfully enter into a teaching profession, the opportunity should be open to him.  The notion is that we reward extra service and recognize that further education today may be necessary for adequate readjustment." *Id.*

This long-standing provision is now casually eliminated by my colleagues, as the court *en banc* "limits [Mr. Rudisill's] Post-9/11 benefits to 10 months and 16 days, the amount of his unused Montgomery entitlement." Maj. Op. at 15.  The court does not mention these 50+ years of understanding and purpose of the GI Bills.  Instead, the court now holds that veterans who re-enlist are capped at an

aggregate total of 36 months of entitlement, if they convert their unused Montgomery benefits into Post-9/11 benefits. This holding, which dramatically reduces education benefits for re-enlisting veterans, has no support in any statute.

The Post-9/11 Bill provides for converting unused Montgomery benefits into Post-9/11 benefits, but it does not thereby eliminate additional benefits for re-enlisting veterans, up to the 48-month cap. The VA had taken this position, but the Veterans Court corrected that holding, on thorough statutory review.

The Veterans Court explained that § 3695(a) provides that the benefit-exchange election provisions in the Post-9/11 Bill do not change the total months of entitlement for veterans with multiple periods of service. As the Veterans Court explained, the Post-9/11 statute authorizes veterans with separate entitlements to "switch freely between programs." Vet. Ct. Op. at 341–43 (citing 38 C.F.R. §§ 21.4022, 21.9690, 21.9635(w)). This court now reverses that holding, and rules that if a veteran with unused Montgomery benefits switches to Post-9/11 benefits, the veteran loses the additional months of Post-9/11 benefits earned by re-enlistment. No statute supports this ruling.

C

### *38 U.S.C. § 3322 and § 3327 do not deprive re-enlisting veterans of the 48-month cap if the veterans convert unused Montgomery benefits to Post-9/11 benefits*

The court erroneously states that 38 U.S.C. § 3322(d) and § 3327 support the present ruling. These provisions relate to switching unused Montgomery or other unused benefits from a given period of service to Post-9/11 benefits. These provisions do not relate to the entitlement of veterans with multiple periods of service to additional benefits up to the cap of 48 months.

38 U.S.C. § 3322(a) concerns concurrent receipt of separate entitlements for the same period of service. This section, like § 3327, is concerned with prohibiting concurrent benefits provided under different programs. These conditions may arise because the Post-9/11 Bill, although enacted in 2008, grants retroactive entitlement for service since September 11, 2001.

38 U.S.C. § 3322 is captioned "Bar to duplication of educational assistance benefits," and includes:

**38 U.S.C. § 3322(d). Additional coordination matters.**—

In the case of an individual entitled to educational assistance under chapter 30, 31, 32, or 35 of this title, chapter 107, 1606, or 1607 of title 10, or the provisions of the Hostage Relief Act of 1980, or making contributions toward entitlement to educational assistance under chapter 30 of this title, as of August 1, 2009, coordination of entitlement to educational assistance under this chapter, on the one hand, and such chapters or provisions, on the other, shall be governed by the provisions of section 5003(c) of the Post-9/11 Veterans Educational Assistance Act of 2008.

The referenced § 5003(c) authorizes the exchange of unused benefits available under other programs for the Post-9/11 benefits. Nothing in any statute or regulation suggests that by making this exchange the veteran forfeits access to the additional re-enlistment Post-9/11 benefits up to 48 months.

The Veterans Court observed that § 3322(d) allows conversion of Montgomery benefits into Post-9/11 benefits for any period of Montgomery service. Vet. Ct. Op. at 342. Section 3322(d) does not concern multiple periods of service. The holding that Mr. Rudisill's conversion of his unused

Montgomery benefits bars entitlement to Post-9/11 benefits earned by re-enlistment is contrary to the Post-9/11 statute. The Veterans Court declined to "assume a meaning in subsection (d)'s silence that automatically disadvantages veterans." *Id.* at 339.

The Veterans Court referred to other provisions of the Post-9/11 Bill, such as § 3322(g) which relates to transferred education benefits to dependents and assures preservation of up to 48 month of benefits; and other provisions preserving "extra benefits based on multiple, separately qualifying periods of service." *Id.* at 336–37. Sections 3322 and 3327 provide a mechanism for exchanging benefits previously subject to the Montgomery Bill for benefits under the Post-9/11 Bill for the same period of qualifying service. These provisions are not concerned with whether the veteran has additional periods of qualifying service. *Id.* at 344.

The legislative record shows the congressional intent to facilitate conversion of Montgomery benefits to Post-9/11 benefits, as well as to authorize Post-9/11 re-enlisting veterans to obtain additional months of Post-9/11 benefits based on re-enlistment. There is no support for the court's holding that veterans can qualify for Post-9/11 benefits for re-enlistment service only after they exhaust their Montgomery benefits.

## D

### *Sections 3322(e) and (g) do not provide that conversion to Post-9/11 benefits results in loss of access to additional months of Post-9/11 benefits*

38 U.S.C. § 3322(e) and § 3322(g) bar concurrent receipt of benefits from different programs. Subsection (e) provides:

**38 U.SC. § 3322(e).  Bar to concurrent receipt of transferred education benefits and Marine**

> **Gunnery Sergeant John David Fry Scholarship Assistance.**—
>
> An individual entitled to educational assistance under both sections 3311(b)(9) and 3319 may not receive assistance under both provisions concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which provision to receive educational assistance.

Subsection (g) is directed to transferred education benefits (such as to children), and also deals with concurrent receipt of benefits:

> **§ 3322(g).  Bar to concurrent receipt of transferred education benefits.**—
>
> A spouse or child who is entitled to educational assistance under this chapter based on a transfer of entitlement from more than one individual under section 3319 may not receive assistance based on transfers from more than one such individual concurrently, but shall elect (in such form and manner as the Secretary may prescribe) under which source to utilize such assistance at any one time.

These provisions are unrelated to whether an election to switch unused Montgomery benefits to Post-9/11 benefits bars access to additional months of Post-9/11 benefits for veterans with multiple entitlements. Such a substantial restriction cannot be inferred from statutory silence. The Veterans Court explained:

> Subsection (g) provides that individuals to whom it applies "shall elect (in such form and manner as the Secretary may prescribe) under which *source* to utilize such assistance *at any one time.*" 38 U.S.C. § 3322(g) (emphasis added). Let's assume that, because subsection (a) doesn't include this language verbatim, it must mean something different than

subsection (g). Consider how odd it would be if Congress intended to allow an entitled person *who didn't personally serve in the military* to receive up to 48 months of *transferred* benefits under subsection (g), mandating only that the person elect the source of the payments at any given time, but— through silence—also intended to prevent a servicemember him- or herself from receiving extra benefits [i.e., 48 total months of benefits] based on multiple, separately qualifying periods of service on the condition of a similar election mechanism. This arguably absurd result should arouse suspicion that such a result is what Congress wanted to achieve.

Vet. Ct. Op. at 336–37 (citing *McNeill v. United States*, 563 U.S. 816, 822 (2011) (adopting an interpretation that "avoids the absurd results that would follow" from an alternate interpretation); *United States v. Wilson*, 503 U.S. 329, 334 (1992); *United States v. Turkette*, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided . . . .")).

The Veterans Court correctly rejected the theory now adopted by my colleagues and held that Mr. Rudisill is entitled to switch the unused Montgomery benefits from his first period of service to Post-9/11 benefits, without losing access to the additional Post-9/11 benefits earned by his multiple enlistments—up to the 48-month cap.

E

### *Section 3327 does not support the court's holding*

38 U.S.C. § 3327(d)(1) authorizes "making an election under subsection (a)." Section 3327(d)(2) does not provide that veterans who make this election, like Mr. Rudisill, lose their entitlement to the additional months of Post-9/11 benefits earned by re-enlistment.

My colleagues hold that § 3327 "unambiguously" provides that a re-enlisting veteran with unused Montgomery benefits, such as Mr. Rudisill, must use those benefits under the Montgomery terms in order to be entitled to Post-9/11 benefits for re-enlistment. Thus the court holds that Mr. Rudisill is limited in total to the 36 months of benefits earned by his initial enlistment. My colleagues attribute this ruling to § 3327(d):

> **38 U.S.C. § 3327(d)(2).—** In the case of an individual making an election under subsection (a) who is described by paragraph (1)(A) of that subsection, the number of months of entitlement of the individual to educational assistance under this chapter shall be the number of months equal to . . . the number of months of unused entitlement of the individual under [the Montgomery GI Bill].

The referenced subsections provide:

> **38 U.S.C. § 3327 (a).   Individuals eligible to elect participation in post-9/11 educational assistance.**
>
> An individual may elect to receive educational assistance under [the Post-9/11 GI Bill] if such individual--
>
> > **(1)** as of August 1, 2009--
> >
> > > **(A)** is entitled to basic educational assistance under chapter 30 of this title [the Montgomery Bill] and has used, but retains unused, entitlement under that chapter;

Section 3327 supports the converse of the court's current interpretation, for this section authorizes election of Post-9/11 benefits to replace unused Montgomery benefits, without even remotely suggesting that such election will forfeit access to additional Post-9/11 benefits based on a separate period of military service.

Other provisions of § 3327 further implement the exchange of unused Montgomery benefits for Post-9/11 benefits. Section 3327 includes benefit-enhancing details such as termination of the monetary contributions that were required by the Montgomery program, as well as ensuring that other incentives are preserved, such as benefits for family members. *See* 38 U.S.C. § 3327(b) (ending "the obligation of the individual to make contributions" required by the Montgomery GI Bill); § 3327(c)(3) (preserving entitlement "that is not revoked" for later use by dependents); § 3327(g) (preserving certain "increased educational assistance or supplemental educational assistance" after the election).

It is inconceivable that Congress intended, through silence, to strip re-enlisting veterans of the education benefits provided for re-enlisting veterans if they convert their unused Montgomery benefits into Post-9/11 benefits. The court errs in holding that by switching his unused Montgomery benefits to Post-9/11 benefits, Mr. Rudisill is now limited to 36 months of total benefits. No statute, no legislative record, no public policy, suggests that a re-enlisting veteran loses access to the 48-month aggregate entitlement by switching benefit programs.

F

### 38 U.S.C. § 3322(h)(1) was enacted to clarify the Post-9/11 Bill

38 U.S.C. § 3322(h) was enacted to address reports of uncertainties in the Post-9/11 GI Bill. *See* S. Rep. No. 111-346 (2010), *reprinted at* 2010 U.S.C.C.A.N. 1503. The provision requires veterans with multiple entitlements to choose which benefit to apply. *Id.*

> **38 U.S.C. § 3322(h)(1).**— An individual with qualifying service . . . that establishes eligibility . . . for educational assistance under this chapter . . . shall

elect . . . under which authority such service is to
be credited.

Section 3322(h)(1) does not provide that veterans who
switch from Montgomery to Post-9/11 benefits will lose
their entitlement to re-enlistment benefits, as my col-
leagues now hold.

The Secretary's M22-4 Manual, which provides in-
structions to VA administrators, explains that veterans are
allowed to "point a period of service to one benefit instead
of another," but not to receive multiple benefits for the
same period of service. Manual at Pt.3, § 3.10, available at
https://perma.cc/XUY8-JZSN?type=image; *see also* Pt.4,
§ 3.02(a), available at https://perma.cc/9DU8HXPE?-
type=image.

Section 3322(h)(1) comports with Mr. Rudisill's election
of Post-9/11 benefits for the unused Montgomery entitle-
ment from his first period of service. His right to Post-9/11
benefits for his subsequent qualifying service, subject to
the aggregate cap of 48 months of benefits, is not affected
by § 3322(h). Additional provisions include 38 U.S.C.
§ 3312(a), which again refers to § 3695's aggregate of 48
months for veterans with more than one period of qualify-
ing service. The alternative or consecutive use of benefits
earned under different programs is recited in 38 U.S.C.
§ 3033(a).

"The words of a statute must be read in their context
and with a view to their place in the overall statutory
scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529
U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treas-
ury*, 489 U.S. 803, 809 (1989)). This statutory context in-
cludes "the purpose of the text" of the statute. Antonin
Scalia & Bryan Garner, *Reading Law: The Interpretation
of Legal Texts* 56 (2012). The majority today fails to take

into account the purpose of § 3322(h)(1), which is to clarify entitlements arising from a single period of service.

## G

### *The regulations for these education benefits make no mention of any forfeiture by re-enlisting veterans of their additional Post-9/11 benefits, as the court now holds*

The regulations are directed primarily to details of the benefit-exchange election that §§ 3322(d) and 3327 make available to all veterans serving after September 11, 2001, with further details in the Secretary's Manual.

For example, 38 C.F.R. § 21.7042(d)(4) states that benefits under the Montgomery GI Bill and the Selective Reserve Montgomery GI Bill may be used "alternatively or consecutively . . . to the extent that the [entitlement to] educational assistance is based on service not irrevocably credited to" another program. *See also* 38 C.F.R. § 21.7540(c).

38 C.F.R. § 21.9635(w) authorizes veterans "in receipt of educational assistance" under the Post-9/11 program and who are "eligible for benefits under another program," to "choose to" alternate back to receiving benefits under the other program at certain intervals, "effective the first day of the enrollment period during which" such choice is made.

38 C.F.R. § 21.4022 and § 21.9690(a) require the veteran to choose which benefit to apply. Section 21.4022 states that a veteran with multiple entitlements may choose to apply Post-9/11 benefits multiple times, with the restriction that an "individual may choose to receive benefits under 38 U.S.C. chapter 33 at any time, but not more than once during a certified term, quarter, or semester."

16                                              RUDISILL v. MCDONOUGH

38 C.F.R. § 21.9520 further envisions application of Post-9/11 benefits based on a period of service not yet used for educational benefits, as outlined in parts (a)–(b), or based on a conversion of the remaining benefits from one period of service, as provided in part (c).

As the Veterans Court stated, the position taken by the VA, and now by my colleagues, "would render [the Secretary's] own regulations inoperable surplusage, something we can't condone." Vet. Ct. Op. at 342. My colleagues' theory that Mr. Rudisill, by making the choice to use Post-9/11 benefits in place of his unused Montgomery benefits, lost his entitlement to the additional Post-9/11 benefits earned by re-enlistment service, cannot be founded on statutory and regulatory silence. *See Finley v. United States*, 490 U.S. 545, 554 (1989) ("It will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.") (quoting *Anderson v. Pac. Coast S.S.*, 225 U.S. 187, 199 (1912)).

## CONCLUSION

There is no foundation for this court's holding that when Mr. Rudisill switched benefit programs, as the statute authorizes, he "limit[ed] his Post-9/11 benefits to 10 months and 16 days, the amount of his unused Montgomery entitlement." Maj. Op. at 15. He did not forfeit his entitlement to the additional months of Post-9/11 benefits earned by re-enlistment, up to the 48-month cap. The court errs in holding that his total benefit is limited to the initial term of 36 months.

I respectfully dissent.

# United States Court of Appeals for the Federal Circuit

---

**JAMES R. RUDISILL,**
*Claimant-Appellee*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2020-1637

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-4134, Chief Judge Margaret C. Bartley, Senior Judge Mary J. Schoelen, Judge Michael P. Allen.

---

REYNA, *Circuit Judge,* with whom NEWMAN, *Circuit Judge*, joins, dissenting.

Etched in stone at the headquarters of the U.S. Department of Veterans Affairs, a mere stone's throw from the steps of this court, are President Abraham Lincoln's words:

> To care for him who shall have borne the battle and for his widow, and his orphan.[1]

These words are more than a mere recitation of the mission statement of the Department of Veterans Affairs. They are a promise manifested in veterans' benefits laws passed by Congress since the founding of this nation. Nothing reflects the benevolence, sincerity, and security of that promise more than the pro-veteran canon of statutory construction.

I dissent for two reasons. First, I disagree with the majority's cursory, legally unsupported conclusion that the pro-veteran canon "plays no role" when there is no ambiguity. Maj. Op. 15. Second, I disagree with the majority's interpretation that 38 U.S.C. § 3327 limits Mr. Rudisill's Post-9/11 benefits to 10 months and 16 days, the amount of his unused Montgomery entitlement. I would affirm the judgment of the U.S. Court of Appeals for Veteran's Claims on this point.

The pro-veteran canon of statutory interpretation ("Veteran's Canon" or "canon") is a traditional tool of statutory construction that assists courts in interpreting statutes and reaching the "best and fairest reading of the law."[2] The canon is simply what its name implies: it is a tool used in the interpretation of veterans' benefits law that mandates favoring the interests of the veteran. The canon is the lockbox that holds the promise expressed in Abraham

---

[1]    U.S. Dep't of Veterans Affairs, *About VA: Mission Statement*, https://www.va.gov/ABOUT_VA/index.asp (last updated Sept. 15, 2022).

[2]    *Kisor v. Wilkie*, 139 S.Ct. 2400, 2430 (2019) (Gorsuch, J., concurring).

Lincoln's words, the roots of which feature prominently in America's history.

In 1776, the Continental Congress created a pension for disabled veterans. This was in response to the states' failure to pay soldiers fighting the Revolutionary War and the resulting mutinies, protests, and rebellions. George Washington wrote to Alexander Hamilton, explaining that the states could not be "so devoid of common sense, common honesty, & common policy" as to refuse aid after considering the "full, clear, & candid representation of [the] facts from Congress," particularly if they learned about "the inevitable consequences" of failing to support the soldiers. George Washington, *The Papers of Alexander Hamilton*, vol. 3, 1782–1786 (Mar. 4, 1783).

In 1862, the U.S. government established a system for settling veterans' claims for benefits arising from military service. In 1917, Congress created programs for veterans' benefits like compensation, insurance, and rehabilitation. With the goal of improving administration of these benefits, Congress established the Veterans Administration in 1930. In 1944, President Roosevelt signed into law the Servicemen's Readjustment Act of 1944, a "GI Bill of Rights" that was the first iteration of the current VA benefit system. Pub. L. No. 78-346, 58 Stat. 284. This GI Bill unanimously passed in both chambers of Congress and served to provide funds to World War II veterans for education, unemployment insurance, and housing. While this GI bill expired in 1956, it was extended as the Montgomery GI bill, then the Post-9/11 Bill, and, most recently, the Forever GI Bill.

The Supreme Court, too, has long recognized the Veteran's Canon as a legal doctrine that upholds congressional purpose in veterans' benefits law. In 1943, the Supreme Court explained that veterans' benefits laws statutes, like the Soldiers' and Sailors' Civil Relief Act, should "be liberally construed to protect those who have been obliged to

drop their own affairs to take up the burden of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943). Justice Douglas wrote that courts should construe separate provisions of an act benefiting veterans as parts of an "organic whole" and give each "as liberal a construction for the benefit of the veteran." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); *see also Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (Marshall, J.) ("The statute is to be liberally construed for the benefit of the returning veteran."). Similarly, Justice Souter wrote that "we would ultimately read the provision in [the veteran's] favor under the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *King v. St. Vincent's Hosp.,* 502 U.S. 215, 220–221 n. 9 (1991).

The foregoing illustrates a corollary of the Veteran's Canon: veterans' benefits law should not just be liberally construed in favor of the veteran but also must not be construed in a manner that negates or frustrates the congressional purpose because the veterans' benefits law is remedial by design. *Kisor v. McDonough*, 995 F.3d 1316, 1336 (Fed. Cir. 2021) (Reyna, J., dissenting) (citing *Boone*, 319 U.S. at 575); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974) (finding the Equal Pay Act to be "broadly remedial and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve"); *James-Cornelius v. Sec'y of Health and Human Servs.*, 984 F.3d 1374, 1381 (Fed. Cir. 2021) (instructing the court to keep in mind the "remedial objective" of the Vaccine Act); *PS Chez Sidney, LLC v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1380–81 (Fed. Cir. 2012) (noting that the Byrd Amendment "had the additional benefit of furthering the statute's stated goals of strengthening the remedial purpose of the law."). Accordingly, the Veteran's Canon should have an undiluted application that effectuates the broader purpose of GI Bills that are specifically *designed* to provide benefits to veterans like Mr. Rudisill.

Despite its clear provenance in U.S. veterans' benefits law, there exists a misunderstanding as to how—and when—the canon applies. For example, in this appeal, the majority resolves the merits of the statutory interpretation question and only then decides in a single sentence that the Veteran's Canon has no application in the case because the statute is unambiguous. This declaration of no ambiguity is belied by a number of factors. First, the near entirety of the majority opinion is devoted to classic statutory interpretation. Second, the question before the court has a rich history of litigation. Third, the case has garnered the attention of numerous amici. Fourth, the majority overturns the judgment of the Court of Appeals for Veterans Claims. And fifth, the majority expresses no principled reason why the canon does not apply to the ambiguity question or in its statutory interpretation analysis.

Indeed, it seems to me that an element of *Chevron* deference creeps into some decisions concerning whether to apply the Veteran's Canon. Step one, determine if there exists an ambiguity without resort to the canon. If the court finds no ambiguity, then the canon does not apply at all. This is wrong. To exclude the canon from the initial—and significantly important—question on whether ambiguity exists in the law effectively bends the law to the favor of, and to the deference of, the agency. I agree with Justice Gorsuch who recently highlighted that, "[t]raditionally, too, our courts have long and often understood that, 'as between the government and the individual[,] the benefit of the doubt' about the meaning of an ambiguous law must be 'given to the individual, not to authority; for the state makes the laws.'" *Buffington v. McDonough*, 2022 WL 16726027, at *10 (U.S. Nov. 7, 2022) (Gorsuch, J., dissenting) (citing *Lane v. State*, 232 N.W. 96, 98 (1930); *Caldwell v. State*, 115 Ohio St. 458, 460–461 (1926)). To exclude the canon at the outset of a statutory interpretation analysis hobbles the veteran and favors the agency.

In veterans' benefits cases, the agency is not an adversary. It is important to note that the Department of Veterans Affairs "differs from virtually every other agency in being itself obliged to help the claimant develop his claim." *Shinseki v. Sanders*, 556 U.S. 396, 415–16 (2009) (Souter, J., dissenting). Department of Veterans Affairs proceedings are informal and non-adversarial and, when evaluating claims, the agency itself must give veterans "the benefit of the doubt." *Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1201 (2011); *id.* at 1199 ("Congress' longstanding solicitude for veterans is plainly reflected in the [act] and in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." (cleaned up)).

The majority, in this case, places its thumb on the side of the scale that favors the agency. In so doing, the court ignores the Supreme Court's recent instruction that courts should exhaust all the traditional tools of construction *before* concluding that a rule is ambiguous. *Kisor*, 139 S.Ct. at 2415. This means that courts should fully employ the pro-veteran canon along with other canons and tiebreaking rules in the "traditional interpretive toolkit" to reach the "best and fairest reading of the law." *Id.* at 2430 (Gorsuch, J., concurring in judgment). Where there is confusion and ambiguity in the statutory scheme, Justice Sotomayor has explained that one should apply the canon. *George v. McDonough*, 142 S.Ct. 1953, 1964 (2022) (Sotomayor, J., dissenting). Thus, it is neither fair nor just for the court to say to the veteran that the pro-veteran canon has no role in the pursuit of her claim because the court finds no ambiguity in the statute. Rather, the canon should apply at the outset of this court's interpretation of veteran's benefits law. Courts should *ab initio* be wary not to defer to a VA interpretation that restricts or limits veteran benefits that Congress has expressly sought to bestow on the veteran.

For example, in this case, Congress clearly sought to expand and enhance education benefits that were already

in place through the enactment of the Post-9/11 GI bill, Title 38, Veterans' Benefits. Congress explained:

> The United States has a proud history of offering educational assistance to millions of veterans, as demonstrated by the many 'G.I. Bills' enacted since World War II.  Educational assistance for veterans helps reduce the costs of war, assist veterans in readjusting to civilian life after wartime service, and boost  States economy, and has a positive effect on recruitment for the Armed Forces.

> The current educational assistance program for veterans [MGIB] is outmoded and designed for peacetime service in the Armed Forces.

> The people of the United States greatly value military service and recognize the difficult challenges involved in readjusting to civilian life after wartime service in the Armed Forces.

> It is in the national interest for the United States to provide veterans who serve on active duty in the Armed Forces after September 11, 2001, with enhanced educational assistance benefits that are worthy of such service and are commensurate with the educational assistance benefits provided by a grateful Nation to veterans of World War II.

Pub. L. No. 110-252, § 5002, 122 Stat. 2358 (2008).

The veteran-friendly nature of this scheme and its remedial nature is arguably the "very raison d'être for passage" of the bill. *Roby v. McDonough*, No. 20-1088, 2021 WL 3378834, at *5 (Fed. Cir. Aug. 4, 2021).  Senator Jim Webb introduced the Post-9/11 bill, explaining that it was designed to "expand the educational benefits that our Nation offers to the brave men and women who have served us so honorably."  Hearing on Pending Benefits Legislation, 110 Cong. 118 (2007) (Statement of Jim Webb); *see, e.g.*, Brief for NVLS as Amicus Curiae Supporting Appellee

at 9.  Congress wanted to "reemphasize that the <u>purpose of providing for transferability of benefits</u> to dependents is to promote recruitment and retention in the uniformed services."  S. Rep. No. 111-346, at 17 (2010) (emphasis added); Brief for Affected Veterans as Amicus Curiae Supporting Appellee at 16.  Indeed, this is consistent with the legislative history of GI Bills dating back to the Servicemen's Readjustment Act of 1944.  Pub. L. No. 78-346, 58 Stat. 284; Brief for NVLS as Amicus Curiae Supporting Appellee at 3.

The foregoing shows that Congress understood, at the time it passed the Post-9/11 Bill, that many veterans were already enrolled and earning benefits under the existing Montgomery GI Bill.  Congress then acted to enhance and expand those educational benefits with the Post-9/11 Bill, thereby keeping true to the promise made to this nation's servicewomen and servicemen.  When viewed in favor of the veteran, the statutory framework makes clear that Mr. Rudisill is entitled to the full benefits subject only to the "cap" of 38 U.S.C. § 3695.  The Veterans Court permissibly and correctly interpreted the provision at issue in favor of Mr. Rudisill.

In conclusion, it bears noting that Mr. Rudisill has already *earned* his educational benefits through his significant service as a three-time Army veteran and Captain who was awarded the Bronze Star, Combat Action Badge, Air Assault Badge, Afghanistan and Iraq Campaign Medals, and Kosovo Campaign Medal.  For having borne the burden of the battle, this court is charged to interpret veteran benefits laws in his favor.  Because the majority fails in that commitment, I dissent.